FILED
United States Court of Appeals
Tenth Circuit

November 20, 2015

Elisabeth A. Shumaker
Clerk of Court

UNITED STATES COURT OF APPEALS

FOR THE TENTH CIRCUIT

STEPHEN CRAIG BURNETT,

Plaintiff - Appellant,

v.

KATHY MILLER; RAYMOND
LARIMER; NANCY COLPETZER;
MARK REIHELD,

Defendants - Appellees.

No. 14-7069
(D.C. No. 6:12-CV-00158-RAW-SPS)
(E.D. Okla.)

ORDER AND JUDGMENT[*]

Before **TYMKOVICH**, Chief Judge, **O'BRIEN** and **GORSUCH**, Circuit Judges.

Stephen Craig Burnett is an inmate in the custody of the Oklahoma

Department of Corrections (ODOC). Proceeding pro se, he appeals[1] from a summary

judgment entered in favor of defendants Kathy Miller, R.N., Raymond Larimer, R.N.,

Nancy Colpetzer, R.N., and Mark Reiheld, M.D., all members of the medical staff at

---

[*] After examining the briefs and appellate record, this panel has determined unanimously that oral argument would not materially assist the determination of this appeal. *See* Fed. R. App. P. 34(a)(2); 10th Cir. R. 34.1(G). The case is therefore ordered submitted without oral argument. This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. It may be cited, however, for its persuasive value consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

[1] Our jurisdiction derives from 28 U.S.C. § 1291.

the Davis Correctional Facility (DCF), a private prison. Burnett's complaint rests on 42 U.S.C § 1983 and state law. Specifically, he claims all of the defendants were deliberately indifferent to his serious medical needs (a heart condition), and the conditions in a medical cell where he was temporarily housed amounted to cruel and unusual punishment, in violation of the Eighth Amendment. He also alleged a First Amendment violation, charging that Miller did not properly attend to his medical needs in retaliation for prior litigation he brought against personnel at another prison. With one exception, we affirm the summary judgment. We remand for the district judge to attend to a matter previously overlooked, namely, whether Burnett's complaints about the conditions in the medical cell where he was temporarily placed rise to the level of a constitutional violation. We also attend to two collateral matters: we reverse both the determination that Burnett has three previous strikes and that the dismissal of this action qualifies as a strike under 28 U.S.C. § 1915(g).

## I.     Factual Background

On November 5, 2011, while incarcerated at DCF Burnett submitted a request for medical services, based on the chest pains he experienced after minor exertion. He was seen in the DCF clinic the following day by defendant Colpetzer, a registered nurse. He reported his chest pains were intermittent but sharp and accompanied by shortness of breath, but with rest the pain resolved within a couple of minutes. Colpetzer measured Burnett's blood pressure, respiration rate, pulse, and temperature. His blood pressure was elevated, but his respirations were even, his

lungs were clear, his skin was pink and warm, he was awake, alert, and oriented, and he did not appear to be in any distress. Colpetzer assessed his chest pain as cardiac, musculoskeletal, or pleuritic. Based on the reported symptoms and her examination, she decided to administer an electrocardiogram (ECG). Although Colpetzer did not interpret the ECG report, she noted it indicated a "normal" ECG. R., Vol. III at 71, 72. She submitted the ECG report for review by defendant Reiheld, the DCF physician.

Colpetzer instructed Burnett to return to the clinic in one week for another blood pressure check. She also recommended scheduling him for an appointment with Reiheld. However, a 30-day wait to see Reiheld was not uncommon. Because she assessed Burnett's condition as not emergent, Colpetzer did not believe it was necessary to accelerate the scheduling of an appointment.

Reiheld reviewed Burnett's ECG report a four days later, on November 10, and determined the results were normal. Burnett returned to the clinic on November 12, and Colpetzer again checked his blood pressure. She reported his blood pressure remained elevated, and noted his continued complaints of chest pain with activity, as well as his denial of pain while resting or upon waking up. She recorded her plan to re-check Burnett's blood pressure the next day and if elevated to schedule an appointment with Reiheld. That same day, Burnett submitted a second request for medical services, asking to see a doctor about his frequent chest pains. On November 13, Burnett returned to the clinic. Colpetzer took his blood pressure and

reported it was within normal reference ranges. She also noted his continued chest pains with activity and his request to see a doctor.

Burnett's November 12 request for medical services was received by the clinic on November 14, and he was scheduled for an appointment on November 22. On November 21, the day before that appointment, Burnett submitted a third request for medical services stating, "I want to talk to a medical doctor ASAP. Any minor exertion causes chest pains. I am 62 years old." *Id.* at 65. Defendants contend Burnett was scheduled to see Reiheld on November 22. But Burnett denies receiving notice of such an appointment. He claims the appointment was for another blood pressure check and, noting his continuing chest pain, denies failing to appear for any appointment <u>with Reiheld</u>. He does not deny failing to go to the clinic on November 22 for a blood pressure re-check.

Burnett submitted a fourth request for medical services on December 4, stating, "I want to see the doctor. Even minor exertion causes me great chest pain." *Id.* at 66. On December 7, Burnett was in the prison library when he was told to go to the clinic. Upon his arrival a duty nurse measured his vital signs and administered a second ECG. This time, the report indicated an "abnormal" ECG. *Id.* at 81. The nurse placed Burnett on Reiheld's appointment schedule, and Reiheld saw him the same day.

At his appointment with Reiheld, Burnett reported a three-week period of recurring chest pain with any significant walking or excitement. He also reported no

previous history of heart problems or chest pain, but said his father had suffered from a stroke at age 68. Reiheld recorded Burnett's blood pressure as 144/91 and noted his previous borderline-elevated blood pressure readings and lack of blood pressure medication. Reiheld's general assessment of Burnett's condition on December 7 was "good." *Id.* at 82. His diagnosis was "angina new onset," and his stated plan for Burnett was "schedule for imaging procedure asap." *Id.* at 83. Because he did not assess Burnett's condition as emergent, Reiheld did not believe immediate transportation to another medical facility was necessary at that time.

Beginning on the afternoon of December 7, Reiheld and Miller, the DCF Health Services Administrator, placed Burnett in an observation cell within the DCF clinic. At that location, he would be readily accessible for transportation once an appointment for an imaging stress test was scheduled at the Oklahoma Heart Hospital (OHH), and he could be monitored in the interim. Burnett contends the conditions in the medical cell—specifically, a lack of heat when the outside temperature was below freezing and a failure to provide him food or drink for a day and half—amounted to cruel and unusual punishment. *See id.* at 271 (Burnett aff. in opposition to summary judgment). According to the nurses' log for December 8 at 9:30 p.m., Burnett was doing fine and had no complaints of pain or distress at that time. *Id.* at 84. A monitoring form dated December 9 showed him to be asleep from midnight until 6:00 a.m., and lying or sitting until 8:00 a.m. That form also included the notation,

"Notify Health Services Staff For: NPO – Ø food or drink."[2] *Id.* at 85. As of 8:30 a.m. on December 9, Burnett was being transported to OHH.

Burnett underwent a myocardial perfusion imaging stress test at OHH on December 9, during which he experienced fatigue and mild dyspnea, as well as severe chest discomfort, which was treated with nitroglycerin. The test showed severely abnormal cardiovascular perfusion.[3] An OHH doctor discussed the test results with Burnett, after which he was taken to the OHH emergency department, where he later reported he was pain free. Because the Oklahoma University Medical Center (OUMC) typically provides hospital care for inmates, OHH attempted to transfer Burnett there for further treatment. But OUMC had no beds available at that time so he was admitted to OHH for monitoring in the interim.

Burnett was transferred to OUMC three days later, on December 12, where he underwent a left heart catheterization and the placement of three stents. According to the OUMC physicians, the procedure was successful. In discharge notes, they recommended a follow-up cardiology appointment in one to two weeks, a healthy heart diet, a daily aspirin regimen, and Effient or Plavix for at least a year. Burnett was discharged from OUMC on December 13 and returned to DCF. Defendant

---

[2]     "NPO" is a medical abbreviation for the Latin "non per os," meaning "nothing by mouth." Stedman's Medical Dictionary 612240 (Westlaw ed. Nov. 2014).

[3]     Burnett claims he suffered a heart attack during the stress test, resulting in permanent heart damage. As explained in Section III.D, *infra*, we need not consider these assertions because he fails to show a genuine factual dispute regarding whether defendants violated his constitutional rights in connection with his medical care.

Larimer, a registered nurse, examined him that day. Burnett told Larimer he was feeling fine and had no shortness of breath or chest pain.

Burnett received a number of medications following the stent procedure at OUMC. Reinheld gave him eight Plavix pills on December 13, and he continued to receive Plavix for one year, as recommended by the OUMC physicians. Reiheld also prescribed aspirin, naproxen, Tylenol, Lisinopril, Lipitor, Nitrostat, Colace, Lopressor, and Milk of Magnesia. With the exception of Lipitor, Burnett received his first 30-day supply of medications on December 16. Because the prison pharmacy did not carry Lipitor, Reiheld substituted Pravachol, another cholesterol-lowering medication, but provision of that drug was delayed while the pharmacy obtained it. Consequently, Burnett did not receive Pravachol until February 2012.

Burnett had a follow-up appointment with a physician at OUMC on March 6, 2012. He told the doctor he was doing well after the stent procedure, had no angina or chest pain, had not used any nitroglycerin, and had received his medications. The OUMC physician increased Burnett's Pravachol dosage and recommended lowering his LDL cholesterol to a target level of 70. As of November 2012, Burnett's LDL cholesterol had dropped to 78.

## II.    Procedural Background

Burnett filed this action against defendants in April 2012, asserting claims under § 1983 and state law. He alleged (1) he was denied prompt and adequate

medical care, in violation of the Eighth Amendment and state law; (2) the conditions

in the medical cell amounted to cruel and unusual punishment, in violation of the

Eighth Amendment; (3) Miller retaliated against him for exercising his First

Amendment right to access the courts; and (4) he suffered extreme emotional distress

as a result of defendants' conduct, in violation of the Eighth Amendment and state

law.

The judge determined that Burnett had three strikes under 28 U.S.C. § 1915(g),

and therefore denied his motion to proceed without prepayment of fees and costs.

Burnett then paid the filing fee.

Defendants ultimately moved for summary judgment, which was entered as to

Burnett's federal claims; the judge declined to exercise jurisdiction over his state-law

claims.  In the summary judgment the judge stated that Burnett's action was

dismissed "as frivolous and malicious" and counted this dismissal as yet another

strike under § 1915(g).  R., Vol. III at 463.

## III.    Discussion

Burnett here makes these arguments:  (1) denying numerous motions he filed

before the entry of summary judgment was an abuse of discretion; (2)  staying the

action pending the filing of a Special Report[4] by defendants violated his right of

---

[4]      The district court ordered defendants to "undertake a review of the subject matter of the complaint (a) to ascertain the facts and circumstances; (b) to consider whether any action can and should be taken by the institution(s) or other appropriate officials to resolve the subject matter of the complaint; and (c) to determine whether

(continued)

- 8 -

access to the courts; (3) genuine issues of disputed material facts foreclosed summary judgment; (4) he does not have three strikes, which would preclude him from pursuing this action without prepayment of fees and costs; and (5) this case is not frivolous and malicious and should not count a strike.[5]

We liberally construe a pro se appellant's briefs. *Cummings v. Evans*, 161 F.3d 610, 613 (10th Cir. 1998). But a pro se party must comply with the same procedural rules as other litigants. *Garrett v. Selby Connor Maddux & Janer*, 425 F.3d 836, 840 (10th Cir. 2005). In particular, an appellant's argument must cite the parts of the record on which he relies. Fed. R. App. P. 28(a)(8)(A). Therefore, to the extent Burnett makes factual assertions in his appeal briefs without providing citations to the record, we will not search the lengthy record to find evidentiary support for his claims. *See Phillips v. James*, 422 F.3d 1075, 1081 (10th Cir. 2005).

other like complaints, whether pending in this court or elsewhere, are related to this complaint and should be taken up an considered together." R., Vol. I at 52. Defendants were directed to file a written report along with their answer to the complaint. *See Martinez v. Aaron*, 570 F.2d 317, 319-320 (10th Cir. 1978) (approving procedure requiring defendants in § 1983 actions to file such reports "to develop the facts as to the color of state law and to enable the trial court to make the preliminary decisions").

[5] We do not address two other contentions Burnett raises in his opening brief. He claims to have exhausted his administrative remedies before filing his complaint. But summary judgment was not entered on that basis. Rather, the judge dismissed as moot defendants' motion raising that contention when it entered summary judgment on the merits of Burnett's claims. He also claims both the district and magistrate judges exhibited bias against him. He fails to state where he raised this claim in the district court, through a motion for recusal or otherwise. And he makes no attempt to show plain error. *See Richison v. Ernest Grp., Inc.*, 634 F.3d 1123, 1127-28 (10th Cir. 2011).

Also, simply asserting the trial court erred, without advancing a reasoned argument for reversal, is insufficient appellate argument to invoke our review.  *See Habecker v. Town of Estes Park*, 518 F.3d 1217, 1223 n.6 (10th Cir. 2008).

## A.    Challenges to Orders Preceding Summary Judgment[6]

Burnett maintains the district court abused its discretion in denying a number of motions he filed before the court entered summary judgment in defendants' favor. But we lack jurisdiction to review many of these denial orders because they were entered by the magistrate judge and Burnett failed to file objections.  *See S.E.C. v. Merrill Scott & Assoc., Ltd.*, 600 F.3d 1262, 1269 (10th Cir. 2010) (magistrate-judge orders are appealable only after properly filed objections are resolved by the district court); Fed. R. Civ. P. 72(a) ("A party may not assign as error a defect in the [magistrate judge's] order not timely objected to.").

Burnett also maintains the district court abused its discretion by staying the action for 142 days pending the filing of a Special Report by defendants.  He argues the stay order denied him access to the courts because it precluded him from filing anything in this action even after defendants failed to file their Special Report by the court-imposed 60-day deadline.  But the stay order was also entered by the magistrate

---

[6]    We separately address Burnett's challenge to the district court's denial of his application to proceed without prepayment of fees and costs after finding Burnett had three strikes under 28 U.S.C. § 1915(g).

judge and Burnett did not file timely objections to it.  Therefore, we lack jurisdiction to review the stay order as well.[7]

A few of the motions Burnett identifies were ultimately denied as moot by the district court when it granted defendants summary judgment.  These include a motion to compel discovery, two motions to clarify discovery orders entered by the magistrate judge, a motion for subpoenas duces tecum, and a motion for the appointment of a court reporter to take depositions on written questions.  But Burnett boldly states, without elaboration, that the court abused its discretion in denying these motions, an insufficient argument to invoke our appellate review.

### B.    Summary Judgment on Eighth Amendment Claims

We review a district court's grant of summary judgment de novo.  *Callahan v. Poppell*, 471 F.3d 1155, 1158 (10th Cir. 2006).  Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  To avoid summary judgment, a plaintiff must come forward with evidence and cannot rely on

---

[7]    Burnett did not file objections to the stay order within fourteen days of its entry, as required by Fed. R. Civ. P. 72(a).  He did file objections within fourteen days of the defendants' filing of the Special Report.  Burnett contends the terms of the stay order precluded him from submitting any filings, including his objections, until defendants filed their Special Report and the stay order expired.  Not so.  Filing objections at that point was not timely under Rule 72(a).  After a stay order has expired or been lifted, a district court has no opportunity to modify or reverse the order as desired by the party raising objections.  Thus, where a party wishes to object to a magistrate judge's order staying all filings pending specified action by one of the parties, he must bring those objections to the district court's attention within the time provided by Rule 72(a) rather than lying behind the log.

"speculation, conjecture, or surmise." *Self v. Crum*, 439 F.3d 1227, 1230 (10th Cir. 2006) (internal quotation marks omitted).

### 1. Medical-Mistreatment Claims

To succeed on an Eighth Amendment medical-mistreatment claim, a prisoner must demonstrate "acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs." *Id.* (internal quotation marks omitted). The court's inquiry is comprised of objective and subjective components. "Under the objective inquiry, the alleged deprivation must be sufficiently serious to constitute a deprivation of constitutional dimension." *Id.* (internal quotation marks omitted). The medical risk Burnett faced—angina-related chest pains—is a sufficiently serious risk to satisfy the objective prong. *See id.* at 1233. That brings us to the second prong of the test.

"[U]nder the subjective inquiry, the prison official must have a sufficiently culpable state of mind." *Id.* at 1230-31 (internal quotation marks omitted). This is "akin to recklessness": "consciously disregard[ing] a substantial risk of serious harm." *Id.* at 1231 (internal quotation marks omitted). In the context of a medical-treatment claim, two types of conduct may constitute deliberate indifference: "(1) a medical professional failing to treat a serious medical condition properly; and (2) a prison official preventing an inmate from receiving medical treatment or denying access to medical personnel capable of evaluating the inmate's condition." *Id.* Importantly, negligent diagnosis or treatment is not enough to demonstrate a

- 12 -

constitutional violation. *Id.* at 1230. Thus, "the subjective component is not satisfied, absent an extraordinary degree of neglect, where a doctor merely exercises his considered medical judgment." *Id.* at 1232. And "an official's failure to alleviate a significant risk that he should have perceived but did not, while no cause for commendation, cannot under our cases be condemned as the infliction of punishment." *Farmer v. Brennan*, 511 U.S. 825, 838 (1994).

### a. Claim of Medical Mistreatment From November 5 Through December 9, 2011

Burnett contends the medical care he received from defendants[8] before his stent procedure was neither prompt nor adequate. He maintains defendants were deliberately indifferent to his serious medical needs when they delayed transporting him to a hospital for further treatment until December 9, 2011, after he began reporting severe chest pain more than a month earlier, on November 5. More specifically, he contends defendants failed to follow ODOC medical protocols to

---

[8] Defendants ought not to be treated as fungible commodities. A plaintiff is required to identify specific acts or omissions by each defendant entitling him to relief as to that defendant. *See Pahls v. Thomas*, 718 F.3d 1210, 1225 (10th Cir. 2013) (stressing that plaintiffs bringing § 1983 lawsuits naming multiple defendants must "make clear exactly *who* is alleged to have done *what* to *whom*" (internal quotation marks omitted)). Burnett often refers generally to "defendants," without specifying an individual defendant. As an example, he does not mention Larimer anywhere in his opening brief. We construe his claims regarding his medical treatment from November 5 through December 9, 2011, as brought only against Colpetzer, Reiheld, and Miller.

We, too, have referred to defendants collectively, but only in reference to their joint filings and shared arguments in the district court and in this court.

properly assess his heart ailment and take appropriate action. He maintains Colpetzer's nursing assessment on November 6 was inadequate under ODOC protocols, and defendants should have administered blood and urine tests, and a chest x-ray. Burnett also contends defendants were deliberately indifferent in failing to administer a second ECG before December 7, in light of his continued complaints of frequent chest pains, and considering his age and risk factors. He complains, "Defendants fixated on [his] high blood pressure and totally ignored his repeated and specific complaints of severe chest pain. And then they did not even give him blood pressure medication." Aplt. Opening Br. at 12.[9]

These facts fail to meet the "high evidentiary hurdle" necessary to demonstrate the subjective prong of a deliberate indifference claim. *Self*, 439 F.3d at 1232. Rather, the evidence shows Colpetzer, Reiheld, and Miller made good faith efforts to diagnose and treat Burnett's medical condition. *See id.* Burnett reported having chest pains with exertion, but Colpetzer did not know if the pain was cardiac, musculoskeletal, or pleuritic. She did administer an ECG on November 6, 2011, but that test was *normal*, as indicated on the test report and as confirmed by Reiheld four days later. Burnett wanted to see a doctor, but the evidence showed the wait for a physician appointment could be up to 30 days at DCF, absent an emergency. In the

---

[9] Burnett also argues the district court considered defendants' Special Report, but ignored his motion to supplement the Special Report and his objections to it, which the court did not mention in its summary judgment order. But Burnett fails to develop this argument by pointing to anything in these filings the court allegedly ignored that precludes summary judgment on his federal claims.

interim, Colpetzer continued to monitor Burnett's blood pressure, which ultimately measured within normal ranges on November 13. She recorded his continuing complaints of chest pain, but noted his denial of pain while resting or upon waking.

No evidence suggests Burnett attended his appointment on November 22 for a blood pressure re-check.[10] In response to his fourth request for medical services on December 4, Burnett was summoned to the clinic on December 7, where he was given another ECG test, the result of which, for the first time, was *abnormal*. In response to that new information, the duty nurse promptly placed him on Reiheld's appointment schedule and he was seen by Reiheld the same day.

Reiheld diagnosed "angina new onset" and determined Burnett needed an imaging test as soon as possible. That test required transportation to OHH. Having assessed Burnett's general condition on December 7 as "good," Reiheld did not believe Burnett required immediate transportation. Burnett points to no evidence that Miller delayed his transfer to OHH in spite of knowing his condition was emergent. While housed in a medical cell awaiting an appointment and transport, Burnett did not complain of chest pains. He was transferred to OHH on December 9, where a stress test was administered and a cardiologist determined he required further treatment for angina. Burnett received that treatment at OUMC on December 12.

_____

[10]    Burnett admits he did not keep the blood pressure appointment, but denies having received notice of an appointment with Reiheld that day. For purposes of this appeal we accept his version of events.

These facts do not show a conscious disregard of Burnett's serious medical needs. At worst, they show that Colpetzer and Reiheld initially misdiagnosed his condition. "But a misdiagnosis, even if rising to the level of medical malpractice, is simply insufficient under our case law to satisfy the subjective component of a deliberate indifference claim." *Id.* at 1234. Thus, if an inmate's symptoms could suggest multiple different diagnoses, the fact a medical provider mistakenly treated the wrong condition is not enough to establish a culpable state of mind under the subjective prong—even if the provider's medical judgment was objectively unreasonable. *See id.*[11]

Burnett nonetheless argues it was obvious his heart ailment required emergency treatment. *See id.* at 1232 (recognizing an actionable deliberate indifference claim "where the need for additional treatment or referral to a medical specialist is obvious"). He contends the extent of the stent procedure performed at OUMC proves his heart condition was almost fatal and obviously emergent. But "our subjective inquiry is limited to consideration of the doctor's knowledge at the time he prescribed treatment for the symptoms presented, not to the ultimate

---

[11] To the extent he failed to prove more than a difference of opinion about the appropriateness of the medical treatment he received, Burnett asserts he was prevented from marshaling the necessary evidence because the district court refused his requests to obtain testimony from an expert medical witness, as well as his motions to appoint counsel. But we have already ruled we lack jurisdiction to review those issues due to Burnett's failure to file objections to the relevant orders entered by the magistrate judge.

- 16 -

treatment necessary." *Id.* at 1233. Thus, we must consider only facts known to each defendant at the time he or she had contact with Burnett.

### b. Claim of Medical Mistreatment After the Stent Procedure

Burnett contends Reiheld was deliberately indifferent to his serious medical needs after he returned to DCF on December 13, 2011, following the stent procedure at OUMC. He points to (1) Reiheld's two-month delay in providing him a cholesterol drug; (2) evidence his ECG remained abnormal after the stent procedure; (3) the OUMC physicians' diagnosis of unstable angina; and (4) the OUMC discharge instructions recommending a healthy heart diet, an aspirin regimen, and a follow-up visit with a cardiologist in one to two weeks. As Burnett would have it, Reiheld was aware of this information yet failed to follow the recommended protocol. In particular, Burnett complains of not receiving a cholesterol drug until February 2012, after he filed a grievance. And his follow-up cardiology appointment was not scheduled until March 6, 2012, again after he filed a grievance. Burnett also maintains defendants failed to administer further diagnostic tests after the stent procedure and instead "wholly ignored him." Aplt. Opening Br. at 10.

These facts, considered in light of all of the facts of his case, again fail to satisfy the subjective prong of the deliberate indifference inquiry. Burnett points to no evidence he reported any serious medical condition to DCF medical staff following the stent procedure. He admits he received all of the medications recommended in his OUMC discharge instructions, including aspirin. Although he

- 17 -

did not immediately receive a cholesterol drug, the evidence indicates it was delayed by the need to obtain a substitute drug. Moreover, a cholesterol drug was not an essential medication immediately following Burnett's stent procedure. *See* R., Vol. III at 133 (Miller Aff. stating, "While a cholesterol lowering drug is important to Mr. Burnett's overall treatment plan, it was not immediately an essential medication."). Burnett filed a grievance about the delay in scheduling a follow-up cardiology appointment. But the evidence shows, as of December 28, 2011, that Reiheld had submitted an appointment request to OUMC, and DCF was awaiting a response. As of February 2012, DCF had requested an expedited appointment. At his follow-up appointment on March 6, 2012, Burnett reported he was doing well, had no angina or other chest pain, and had not used any nitroglycerin.

Burnett fails to establish any deviation from the OUMC discharge protocol that rose to the level of recklessness or an extraordinary degree of neglect. *See Self*, 439 F.3d at 1231-32. Moreover, Burnett has not demonstrated any delay in providing his cholesterol drug or in scheduling his follow-up appointment caused him substantial harm. *See Olson v. Stotts*, 9 F.3d 1475, 1477 (10th Cir. 1993) ("Delay in medical care can only constitute an Eighth Amendment violation if there has been deliberate indifference which results in substantial harm." (internal quotation marks and brackets omitted)).[12]

---

[12] Burnett argues the district court ignored his contention of a pattern and practice of defendants denying prompt and adequate medical care to DCF inmates.

(continued)

- 18 -

## 2.    Claim the Medical Cell Conditions Amount to Cruel and Unusual Punishment.

The Eighth Amendment's prohibition of cruel and unusual punishment imposes a duty on prison officials to provide humane conditions of confinement, including adequate food, clothing, shelter, sanitation, medical care, and reasonable safety from serious bodily harm.  *Farmer*, 511 U.S. at 832.  "To prevail on a 'conditions of confinement' claim under the Eighth Amendment, an inmate must establish that (1) the condition complained of is sufficiently serious to implicate constitutional protection, and (2) prison officials acted with deliberate indifference to inmate health or safety."  *Reynolds v. Powell*, 370 F.3d 1028, 1031 (10th Cir. 2004) (internal quotation marks omitted).

He mentions two inmates who allegedly died as a result of their inadequate care, and two other inmates who defendants allegedly denied medication prescribed after their stent procedures.  Burnett claims to have filed affidavits from three inmates supporting his pattern-and-practice contention, but he fails to identify where these affidavits are in the voluminous record.

Burnett also cites *Ramos v. Lamm*, 639 F.2d 559 (10th Cir. 1980), in support of this proposition.  But *Ramos* stated, "*In class actions challenging the entire system of health care,* deliberate indifference to inmates' health needs may be shown by proving repeated examples of negligent acts which disclose a pattern of conduct by the prison medical staff."  *Id.* at 575 (emphasis added).  Burnett did not file a class action.  Moreover, to the extent a prison's pattern and practice may be relevant to the question of deliberate indifference regarding an individual inmate's treatment, *cf. McDonnell Douglas Corp., v. Green*, 411 U.S. 792, 804-05 (1973) (holding in employment discrimination case that statistical evidence of employer's general policy and practice may be relevant circumstantial evidence of discriminatory intent behind individual employment decision), Burnett does not cite admissible evidence supporting his claim of such a pattern and practice at DCF.

Burnett contends disputed issues of material fact precluded summary judgment on his complaints about the conditions in the medical cell, while he temporarily awaited transport to OHH. Liberally construed, Burnett raised this claim in his complaint, but defendants did not address it in their summary judgment motion. In response to that motion, Burnett came forward with evidence of the lack of heat and a directive to withhold food or drink while he was housed in the medical cell for over twenty-four hours. In their district court reply brief, defendants ignored these facts. Although the district court mentioned Burnett's evidence regarding a lack of heat, it did not address his evidence of a refusal of food or drink, and it ultimately did not make any explicit ruling on this claim when it granted summary judgment in favor of defendants on all of Burnett's federal claims. Defendants once again ignore this evidence in their appeal brief.

Where a district court has failed to rule on a claim, we ordinarily remand to the district court to consider the claim in the first instance. *See Tabor v. Hilti, Inc.*, 703 F.3d 1206, 1227 (10th Cir. 2013). We discern no reason to deviate from that practice with regard to this claim, the proper resolution of which is not "beyond any doubt." *Singleton v. Wulff*, 428 U.S. 106, 121 (1976). We have said that, "[i]n general, the severity and duration of deprivations are inversely proportional, so that minor deprivations suffered for short periods would not rise to an Eighth Amendment violation, while substantial deprivations of shelter, food, drinking water, and sanitation may meet the standard despite a shorter duration." *DeSpain v. Uphoff*,

- 20 -

264 F.3d 965, 974 (10th Cir. 2001) (internal quotation marks omitted). Moreover, "[b]ecause it is difficult, if not impossible, to prove another person's actual state of mind, whether an official had knowledge may be inferred from circumstantial evidence," and "a factfinder may conclude that a prison official knew of a substantial risk from the very fact that the risk was obvious." *Id.* at 975 (internal quotation marks omitted). We therefore remand to the district court to examine these issues and rule on Burnett's claim that the medical cell conditions violated the Eighth Amendment.

## C.     First Amendment Retaliation Claim

Burnett alleged in his complaint that Miller (1) denied him prompt and adequate medical care; (2) delayed his transportation to OHH for the stress test; and (3) delayed his post-procedure medications, all in retaliation for his recent history of filing lawsuits against prison officials at other facilities managed by the same private company as DCF. He cited five previous lawsuits as the basis for Miller's retaliation. Burnett argues, defendants do not dispute, and we agree the district court failed to rule on this claim. In this instance, however, the retaliation claim was fully briefed in the district court and on appeal. And unlike his prison-conditions claim, the proper resolution of his retaliation claim "is beyond any doubt." *Singleton*, 428 U.S. at 121. We therefore exercise our discretion to resolve this claim. *See United States v. Jarvis*, 499 F.3d 1196, 1202 (10th Cir. 2007) (noting exercise of discretion may be appropriate where "no additional findings of fact or presentation of evidence [is]

- 21 -

required for the issue's disposition and both parties had the opportunity to address the issue in their appellate briefing").

"It is well-settled that prison officials may not retaliate against or harass an inmate because of the inmate's exercise of his right of access to the courts." *Gee v. Pacheco*, 627 F.3d 1178, 1189 (10th Cir. 2010) (internal quotation marks and brackets omitted). But to prove a retaliation claim, a prisoner must present evidence of his "constitutionally protected activity" and the defendant's "responsive action that would chill a person of ordinary firmness from continuing to engage in that activity," as well as evidence indicating the defendant's "action was substantially motivated as a response to his exercise of constitutionally protected conduct." *Id.* (internal quotation marks and brackets omitted).

Defendants argued in the district court that Burnett's claim was based entirely on supposition and conjecture. *See Peterson v. Shanks*, 149 F.3d 1140, 1144-45 (10th Cir. 1998) (affirming summary judgment on retaliation claims "based on mere speculation rather than evidence"). Miller submitted an affidavit denying she was aware of Burnett's lawsuits against a prison official at another facility. Defendants contended further that, even if Miller had such knowledge, there was no evidence it was the motivating factor in her decisions regarding Burnett's treatment. *See id.* at 1144 (holding prisoner "presented no evidence that the defendants' allegedly retaliatory motives were the 'but for' cause of [their] actions"). In his district court brief, Burnett argued he could rely on circumstantial evidence, such as suspicious

timing, but he failed to cite any evidence to support that claim. He otherwise contended Miller's retaliation could be inferred because she had no other, valid reason for her behavior. On appeal, Burnett simply references the allegations in his complaint. Miller is entitled to summary judgment on Burnett's retaliation claim, which is based on supposition and conjecture, rather than evidence.

### D. Damages for Physical Injury and Extreme Emotional Distress

In his complaint, Burnett alleged he suffered extreme emotional distress due to defendants' acts and omissions, in violation of the Eighth Amendment and state law. He does not challenge the district court's decision not to exercise continuing jurisdiction over his state-law claim of intentional infliction of emotional distress. But as to his federal claims, Burnett argues the district court erred in holding he failed to show he suffered a physical injury in addition to mental or emotional harms, as required by 42 U.S.C. § 1997e(e), which provides: "No Federal civil action may be brought by a prisoner confined in a . . . prison . . . for mental or emotional injury suffered while in custody without a prior showing of physical injury . . . ." Burnett contends there is evidence he suffered permanent heart damage, as well as emotional distress, as a result of defendants' deliberate indifference in providing him medical care.

We need not decide this issue because Burnett failed to identify disputed issues of material fact with respect to his medical-mistreatment claims and his retaliation claim. He must show damages resulting from a constitutional violation,

not merely damages that might result from his medical treatment. Stated differently, whether and what type of damages Burnett may recover is not at issue absent a showing defendants violated Burnett's constitutional rights. *Cf. Searles v. Van Bebber*, 251 F.3d 869, 876 (10th Cir. 2001) ("[Section 1997e(e)] limits the *remedies available*, regardless of the rights asserted, if the only injuries are mental or emotional." (emphasis added)).

E.      **Application to Proceed in the District Court Without Prepayment of Fees and Costs**

Burnett moved to proceed in the district court without prepayment of fees or costs. The motion was denied because he had three previous strikes under 28 U.S.C. § 1915(g). Burnett challenges the three-strikes ruling, arguing none of the cited previous actions were dismissed in their entirety as frivolous, malicious, or for failure to state a claim. *See Thomas v. Parker*, 672 F.3d 1182, 1183 (10th Cir. 2012) ("[The] plain language of § 1915(g) provides that a plaintiff will incur a strike only when an entire action is dismissed based on one of the listed grounds."). We review this issue de novo. *See Smith v. Veterans Admin.*, 636 F.3d 1306, 1309 (10th Cir. 2011). In one of the cited actions, some of Burnett's claims were decided on the merits (as opposed to being dismissed for reasons contained in the statute), and this court affirmed the merits determination. *See Burnett v. Jones*, No. 10-CV-257, 2010 WL 5125538 (W.D. Okla. Dec. 9, 2010), *aff'd*, 437 F. App'x 736, 748-49 (10th Cir. 2011) (unpublished) (affirming grant of summary judgment on Counts 9 and 13). It therefore does not count as a strike. Absent three qualifying strikes under § 1915(g),

we need not determine whether the dispositions of the other two actions cited by the district court qualify as strikes. Burnett should have been permitted to proceed in the district court without prepayment of fees and costs.[13]

### F. Application to Proceed on Appeal Without Prepayment of Fees and Costs

The district court also denied Burnett's application for leave to appeal without prepayment of fees and costs based on the three strikes just discussed. Also, after reviewing Burnett's claims on the merits and granting defendants summary judgment, the district court also stated, without further analysis, "[T]his action is, in all respects, DISMISSED as frivolous and malicious. This dismissal shall count as a STRIKE, pursuant to 28 U.S.C. § 1915(g)." R., Vol. III at 463. The imposition of yet another strike begs the question: Can that strike counts as the third predicate strike preventing this appeal from being taken without prepayment of fees and costs? Recently, in *Coleman v. United States*, 135 S. Ct. 1759, 1763 (2015), the Supreme Court addressed the imposition of strikes. It decided a new filing in a district court is subject to the three strike rule even though one of the predicate strikes is on appeal. To that extent *Coleman* reversed our precedent. *See Jennings v. Natrona Cty. Det. Ctr. Med. Facility*, 175 F.3d 775, 779 (10th Cir. 1999) (holding district court dismissal should not be counted as a strike before the litigant has exhausted or waived his opportunity to

---

[13]   He paid the filing fee, making the immediate payment issue moot but not the three strikes issue.

appeal"). But this case presents a different twist; one of the predicate strikes was imposed in this case and is challenged in this appeal. We do not read *Coleman* to prevent our consideration of the propriety of that strike at the threshold of this appeal. Although we discuss the issue last, we considered it first and decided the strike was improperly imposed.

Under § 1915(g):

In no event shall a prisoner bring a civil action or appeal a judgment in a civil action or proceeding under [the federal in forma pauperis statute] if the prisoner has, on 3 or more prior occasions, while incarcerated or detained in any facility, brought an action or appeal in a court of the United States that was dismissed on the grounds that it is frivolous, malicious, or fails to state a claim upon which relief may be granted, unless the prisoner is under imminent danger of serious physical injury.

A complaint "is frivolous where it lacks an arguable basis either in law or in fact." *Neitzke v. Williams*, 490 U.S. 319, 325 (1989). Examples of frivolous claims are those "based on an indisputably meritless legal theory," such as a claim asserting "infringement of a legal interest which clearly does not exist," as well as claims asserting "factual contentions [that] are clearly baseless," such as those "describing fantastic or delusional scenarios." *Id.* at 327-28. But "[w]hen a complaint raises an arguable question of law which the district court ultimately finds is correctly resolved against the plaintiff, . . . dismissal on the basis of frivolousness is not [appropriate]." *Id.* at 328. Thus, "not all unsuccessful claims are frivolous." *Id.* at 329. "[W]here the frivolousness determination turns on an issue of law, we review the determination *de novo*." *Fogle v. Pierson*, 435 F.3d 1252, 1259 (10th Cir. 2006).

Burnett first argues the district court was required to screen his complaint for frivolousness immediately after it was filed, rather than making that determination more than two years later. But 28 U.S.C. § 1915(e)(2) directs a district court to dismiss an action at any time it determines it is frivolous or malicious. *See Buchheit v. Green*, 705 F.3d 1157, 1160 (10th Cir. 2012).

He also contends his complaint was neither frivolous nor malicious. We agree. Among other claims, Burnett alleged a violation of federal and state law based on a 30-day delay in obtaining treatment for his severe chest pain, a medical condition which ultimately required the placement of three stents. His failure to come forward with sufficient evidence of deliberate indifference does not mean his federal claim was frivolous. The judge erred in holding Burnett's complaint *as a whole* was subject to dismissal as frivolous and malicious. *See Thomas*, 672 F.3d at 1183. We therefore reverse the imposition of a strike under § 1915(g).

Burnett is permitted to proceed on appeal without prepayment of fees and costs. But only prepayment of fees is excused, not the fees themselves. In this case the fees amount to $505. Payment must be made to the clerk of the district court

## IV. Conclusion

We remand to the district court to decide in the first instance Burnett's claim of unconstitutional conditions in the medical cell, and we reverse the district court's holdings that he had three previous strikes and that the dismissal of this action counts as a strike under 28 U.S.C. § 1915(g). We otherwise affirm the district court's

- 27 -

judgment.  We grant Burnett's application to proceed on appeal without prepayment of fees and costs, but remind him of his continuing obligation to make partial payments until the appellate filing fee has been paid in full.

Entered for the Court


Terrence L. O'Brien
Circuit Judge