(Slip Opinion) OCTOBER TERM, 2014 1

NOTE: Where it is feasible, a syllabus (headnote) will be released, as is being done in connection with this case, at the time the opinion is issued. The syllabus constitutes no part of the opinion of the Court but has been prepared by the Reporter of Decisions for the convenience of the reader. See *United States* v. *Detroit Timber & Lumber Co.,* 200 U. S. 321, 337.

# SUPREME COURT OF THE UNITED STATES

Syllabus

## COLEMAN, AKA COLEMAN-BEY *v.* TOLLEFSON ET AL.

### CERTIORARI TO THE UNITED STATES COURT OF APPEALS FOR THE SIXTH CIRCUIT

No. 13–1333.   Argued February 23, 2015—Decided May 18, 2015*

Ordinarily, a federal litigant who is too poor to pay court fees may proceed *in forma pauperis*.  This means that the litigant may commence a civil action without prepaying fees or paying certain expenses.  See 28 U. S. C. §1915(a).  But a special "three strikes" provision prevents a court from affording *in forma pauperis* status to a prisoner who "has, on 3 or more prior occasions, while incarcerated . . . , brought an action or appeal in a court of the United States that was dismissed on the grounds that it is frivolous, malicious, or fails to state a claim upon which relief may be granted."  §1915(g).

   Petitioner Coleman, a state prisoner, filed three federal lawsuits that were dismissed on grounds enumerated in §1915(g).  While the third dismissal was pending on appeal, he filed four additional federal lawsuits, moving to proceed *in forma pauperis* in each.  The District Court refused to permit him to proceed *in forma pauperis* in any of those lawsuits, holding that a prior dismissal is a strike under §1915(g) even if it is pending on appeal.  The Sixth Circuit agreed with the District Court.

*Held*: A prior dismissal on one of §1915(g)'s statutorily enumerated grounds counts as a strike, even if the dismissal is the subject of an ongoing appeal.  Pp. 4–9.

   (a) Coleman suggests that that a dismissal should count as a strike only once appellate review is complete.  But the word "dismissed" does not normally include subsequent appellate activity.

———————
   *Together with *Coleman, aka Coleman-Bey* v. *Bowerman et al.*; *Coleman*, *aka Coleman-Bey* v. *Dykehouse et al.*, and *Coleman*, *aka Coleman-Bey* v. *Vroman et al.* (see this Court's Rule 12.4), also on certiorari to the same court.

Syllabus

See, *e.g., Heintz* v. *Jenkins*, 514 U. S. 291, 294. And §1915 itself de-
scribes dismissal as an action taken by a single court, not as a se-
quence of events involving multiple courts. See §1915(e). Coleman
further contends that the phrase "prior occasions" creates ambiguity.
But nothing about that phrase transforms a dismissal into a dismis-
sal-plus-appellate-review. In the context of §1915(g), a "prior occa-
sion" merely means a previous instance in which a "prisoner has . . .
brought an action or appeal . . . that was dismissed on" statutorily
enumerated grounds.

   A literal reading of the "three strikes" provision is consistent with
the statute's treatment of the trial and appellate states of litigation
as distinct. See §§1915(a)(2), (a)(3), (b)(1), (e)(2), (g). It is also sup-
ported by the way in which the law ordinarily treats trial court
judgments, *i.e.,* a judgment normally takes effect despite a pending
appeal, see Fed. Rule Civ. Proc. 62; Fed. Rule App. Proc. 8(a), and its
preclusive effect is generally immediate, notwithstanding any appeal,
see *Clay* v. *United States*, 537 U. S. 522, 527.

   Finally, the statute's purpose favors this Court's interpretation.
The "three strikes" provision was "designed to filter out the bad
claims and facilitate consideration of the good," *Jones* v. *Bock*, 549
U. S. 199, 204. To refuse to count a prior dismissal because of a
pending appeal would produce a leaky filter, because a prisoner could
file many new lawsuits before reaching the end of the often lengthy
appellate process. By contrast, the Court perceives no great risk that
an erroneous trial court dismissal might wrongly deprive a prisoner
of *in forma pauperis* status in a subsequent lawsuit. Pp. 4–8.

   (b) Coleman also argues that if the dismissal of a third complaint
counts as a third strike, a litigant will lose the ability to appeal *in
forma pauperis* from that strike itself. He believes this is a result
that Congress could not possibly have intended. Because Coleman is
not appealing from a third-strike trial-court dismissal here, the Court
declines to address that question. Pp. 8–9.

733 F. 3d 175, affirmed.

BREYER, J., delivered the opinion for a unanimous Court.

NOTICE: This opinion is subject to formal revision before publication in the preliminary print of the United States Reports. Readers are requested to notify the Reporter of Decisions, Supreme Court of the United States, Washington, D. C. 20543, of any typographical or other formal errors, in order that corrections may be made before the preliminary print goes to press.

# SUPREME COURT OF THE UNITED STATES

———————

No. 13–1333

———————

ANDRE LEE COLEMAN, AKA ANDRE LEE COLEMAN-BEY, PETITIONER *v.* TODD TOLLEFSON, ET AL.

ANDRE LEE COLEMAN, AKA ANDRE LEE COLEMAN-BEY, PETITIONER *v.* BERTINA BOWERMAN, ET AL.

ANDRE LEE COLEMAN, AKA ANDRE LEE COLEMAN-BEY, PETITIONER *v.* STEVEN DYKEHOUSE, ET AL.

ANDRE LEE COLEMAN, AKA ANDRE LEE COLEMAN-BEY, PETITIONER *v.* AARON J. VROMAN, ET AL.

ON WRIT OF CERTIORARI TO THE UNITED STATES COURT OF APPEALS FOR THE SIXTH CIRCUIT

[May 18, 2015]

JUSTICE BREYER delivered the opinion of the Court.

Ordinarily, a federal litigant who is too poor to pay court fees may proceed *in forma pauperis.* This means that the litigant may commence a civil action without prepaying fees or paying certain expenses. See 28 U. S. C. §1915. But a special "three strikes" provision prevents a court from affording *in forma pauperis* status where the litigant is a prisoner and he or she "has, on 3 or more prior occasions, while incarcerated . . . , brought an action or appeal in a court of the United States that was dismissed on the grounds that it is frivolous, malicious, or fails to state a claim upon which relief may be granted." §1915(g).

Prior to this litigation, a Federal District Court had dismissed on those grounds three actions brought by a

state prisoner.  While the third dismissal was pending on appeal, the prisoner sought to bring several additional actions in the federal courts.  The question before us is whether the prisoner may litigate his new actions *in forma pauperis*.  Where an appeals court has not yet decided whether a prior dismissal is legally proper, should courts count, or should they ignore, that dismissal when calculating how many qualifying dismissals the litigant has suffered?

We conclude that the courts must count the dismissal even though it remains pending on appeal.  The litigant here has accumulated three prior dismissals on statutorily enumerated grounds.  Consequently, a court may not afford him *in forma pauperis* status with respect to his additional civil actions.

I

A

Congress first enacted an *in forma pauperis* statute in 1892.  See Act of July 20, ch. 209, 27 Stat. 252.  Congress recognized that "no citizen sh[ould] be denied an opportunity to commence, prosecute, or defend an action, civil or criminal, in any court of the United States, solely because his poverty makes it impossible for him to pay or secure the costs." *Adkins* v. *E. I. DuPont de Nemours & Co.*, 335 U. S. 331, 342 (1948) (internal quotation marks omitted).  It therefore permitted a citizen to "commence and prosecute to conclusion any such . . . action without being required to prepay fees or costs, or give security therefor before or after bringing suit." §1, 27 Stat. 252.  The current statute permits an individual to litigate a federal action *in forma pauperis* if the individual files an affidavit stating, among other things, that he or she is unable to prepay fees "or give security therefor."   28 U. S. C. §1915(a)(1).

Even in 1892, "Congress recognized . . . that a litigant

whose filing fees and court costs are assumed by the public, unlike a paying litigant, lacks an economic incentive to refrain from filing frivolous, malicious, or repetitive lawsuits." *Neitzke* v. *Williams*, 490 U. S. 319, 324 (1989). And as the years passed, Congress came to see that prisoner suits in particular represented a disproportionate share of federal filings. *Jones* v. *Bock*, 549 U. S. 199, 202–203 (2007). It responded by "enact[ing] a variety of reforms designed to filter out the bad claims [filed by prisoners] and facilitate consideration of the good." *Id.*, at 204. Among those reforms was the "three strikes" rule here at issue. The rule, which applies to *in forma pauperis* status, reads in its entirety as follows:

> "In no event shall a prisoner bring a civil action or appeal a judgment in a civil action or proceeding [*in forma pauperis*] if the prisoner has, on 3 or more prior occasions, while incarcerated or detained in any facility, brought an action or appeal in a court of the United States that was dismissed on the grounds that it is frivolous, malicious, or fails to state a claim upon which relief may be granted, unless the prisoner is under imminent danger of serious physical injury." §1915(g).

## B

The petitioner, André Lee Coleman, is incarcerated at the Baraga Correctional Facility in Michigan. By 2010, three federal lawsuits filed by Coleman during his incarceration had been dismissed as frivolous (or on other grounds enumerated in §1915(g)). Nonetheless, when Coleman filed four new federal lawsuits between April 2010 and January 2011, he moved to proceed *in forma pauperis* in each. He denied that his third dismissed lawsuit counted as a strike under §1915(g). That is because he had appealed the dismissal, and the appeals court had not yet ruled. Thus, in Coleman's view, he had

fewer than three qualifying dismissals, and was eligible for *in forma pauperis* status under the statute.

The District Court rejected Coleman's argument. It held that "a dismissal counts as a strike even if it is pending on appeal at the time that the plaintiff files his new action." No. 10–cv–337 (WD Mich., Apr. 12, 2011), App. to Pet. for Cert. 21a, 24a. It thus refused to permit Coleman to proceed *in forma pauperis* in any of his four suits.

On appeal, a divided panel of the Sixth Circuit agreed with the District Court. 733 F. 3d 175 (2013). It resolved the four cases using slightly different procedures. In one of the four cases, the Sixth Circuit affirmed the District Court's judgment. In the remaining three cases, it denied Coleman's request to proceed *in forma pauperis* on appeal. It subsequently dismissed the three cases for want of prosecution after Coleman failed to pay the appellate filing fees.

In contrast to the Sixth Circuit, the vast majority of the other Courts of Appeals have held that a prior dismissal on a statutorily enumerated ground does not count as a strike while an appeal of that dismissal remains pending. See *Henslee* v. *Keller*, 681 F. 3d 538, 541 (CA4 2012) (listing, and joining, courts that have adopted the majority view). In light of the division of opinion among the Circuits, we granted Coleman's petition for certiorari.

## II

## A

In our view, the Sixth Circuit majority correctly applied §1915(g). A prior dismissal on a statutorily enumerated ground counts as a strike even if the dismissal is the subject of an appeal. That, after all, is what the statute literally says. The "three strikes" provision applies where a prisoner "has, on 3 or more prior occasions . . . brought an action or appeal . . . *that was dismissed* on" certain grounds. §1915(g) (emphasis added). Coleman believes

that we should read the statute as if it referred to an "affirmed dismissal," as if it considered a trial court dismissal to be provisional, or as if it meant that a dismissal falls within the statute's scope only when the litigant has no further chance to secure a reversal. But the statute itself says none of these things.

Instead, the statute refers to whether an action or appeal "was dismissed." §1915(g). The linguistic term "dismiss," taken alone, does not normally include subsequent appellate activity. See, *e.g., Heintz* v. *Jenkins*, 514 U. S. 291, 294 (1995) ("[T]he District Court dismissed [the] lawsuit for failure to state a claim. . . . However, the Court of Appeals for the Seventh Circuit reversed the District Court's judgment"); *Gray* v. *Netherland*, 518 U. S. 152, 158 (1996) ("The Suffolk Circuit Court dismissed petitioner's state petition for a writ of habeas corpus. The Virginia Supreme Court affirmed the dismissal"). Indeed, §1915 itself describes dismissal as an action taken by a single court, not as a sequence of events involving multiple courts. See §1915(e)(2) ("*[T]he court* shall dismiss the case at any time if *the court* determines that—(A) the allegation of poverty is untrue; or (B) the action or appeal—(i) is frivolous or malicious; [or] (ii) fails to state a claim on which relief may be granted" (emphasis added)).

Coleman insists that §1915(g) is not so clear. Even if the term "dismissed" is unambiguous, contends Coleman, the phrase "prior occasions" creates ambiguity. Coleman observes that the phrase "'may refer to a single moment or to a continuing event: to an appeal, independent of the underlying action, or to the continuing claim, inclusive of both the action and its appeal.'" Brief for Petitioner 17 (quoting *Henslee, supra*, at 542). Coleman believes that a "prior occasion" in the context of §1915(g) may therefore include both a dismissal on an enumerated ground and any subsequent appeal.

We find it difficult to agree. Linguistically speaking, we

see nothing about the phrase "prior occasions" that would transform a dismissal into a dismissal-plus-appellate-review. An "occasion" is "a particular occurrence," a "happening," or an "incident." Webster's Third New International Dictionary 1560 (3d ed. 1993). And the statute provides the content of that occurrence, happening, or incident: It is an instance in which a "prisoner has . . . brought an action or appeal in a court of the United States that was dismissed on" statutorily enumerated grounds. §1915(g). Under the plain language of the statute, when Coleman filed the suits at issue here, he had already experienced three such "prior occasions."

Our literal reading of the phrases "prior occasions" and "was dismissed" is consistent with the statute's discussion of actions and appeals. The *in forma pauperis* statute repeatedly treats the trial and appellate stages of litigation as distinct. See §§1915(a)(2), (a)(3), (b)(1), (e)(2), (g). Related provisions reflect a congressional focus upon trial court dismissal as an important separate element of the statutory scheme. See §1915A (requiring a district court to screen certain prisoner complaints "as soon as practicable" and to dismiss any portion of the complaint that "is frivolous, malicious, or fails to state a claim upon which relief may be granted"); 42 U. S. C. §1997e(c)(1) (similar). We have found nothing in these provisions indicating that Congress considered a trial court dismissal and an appellate court decision as if they were a single entity—or that Congress intended the former to take effect only when affirmed by the latter.

Our literal reading of the "three strikes" provision also is supported by the way in which the law ordinarily treats trial court judgments. Unless a court issues a stay, a trial court's judgment (say, dismissing a case) normally takes effect despite a pending appeal. See Fed. Rule Civ. Proc. 62; Fed. Rule App. Proc. 8(a). And a judgment's preclusive effect is generally immediate, notwithstanding any appeal.

See *Clay* v. *United States*, 537 U. S. 522, 527 (2003) ("Typically, a federal judgment becomes final for . . . claim preclusion purposes when the district court disassociates itself from the case, leaving nothing to be done at the court of first instance save execution of the judgment"). The ordinary rules of civil procedure thus provide additional support for our interpretation of the statute. See *Jones*, 549 U. S., at 211–216 (applying the ordinary rules of civil procedure where the procedural requirements for prison litigation do not call for an alternative).

Finally, the statute's purpose favors our interpretation. The "three strikes" provision was "designed to filter out the bad claims and facilitate consideration of the good." *Id.,* at 204. To refuse to count a prior dismissal because of a pending appeal would produce a leaky filter. Appeals take time. During that time, a prisoner could file many lawsuits, including additional lawsuits that are frivolous, malicious, or fail to state a claim upon which relief may be granted. Indeed, Coleman filed these four cases after he suffered his third qualifying dismissal, in October 2009, and before the affirmance of that order, in March 2011.

We recognize that our interpretation of the statute may create a different risk: An erroneous trial court dismissal might wrongly deprive a prisoner of *in forma pauperis* status with respect to lawsuits filed after a dismissal but before its reversal on appeal. But that risk does not seem great. For one thing, the Solicitor General informs us that he has been able to identify only two instances in which a Court of Appeals has reversed a District Court's issuance of a third strike. Brief for United States as *Amicus Curiae* 22, n. 5. For another, where a court of appeals reverses a third strike, in some instances the prisoner will be able to refile his or her lawsuit after the reversal, seeking *in forma pauperis* status at that time. Further, if the statute of limitations governing that lawsuit has run out before the court of appeals reverses the third strike, the Solicitor

General assures us that prisoners will find relief in Federal Rule of Civil Procedure 60(b). According to the Solicitor General, a prisoner may move to reopen his or her interim lawsuits (reinstating the cases as of the dates originally filed) and may then seek *in forma pauperis* status anew. In any event, we believe our interpretation of the statute hews more closely to its meaning and objective than does Coleman's alternative.

B

Coleman makes an additional argument. He poses a hypothetical: What if this case had involved an attempt to appeal from the trial court's dismissal of his third complaint instead of an attempt to file several additional complaints? If the dismissal were counted as his third strike, Coleman asserts, he would lose the ability to appeal *in forma pauperis* from that strike itself. He believes that this result, which potentially could deprive him of appellate review, would be unfair. He further believes that it would be such a departure from the federal courts' normal appellate practice that Congress could not possibly have intended it.

The Solicitor General, while subscribing to our interpretation of the statute, supports Coleman on this point. The Solicitor General says that we can and should read the statute to afford a prisoner *in forma pauperis* status with respect to an appeal from a *third* qualifying dismissal— even if it does not allow a prisoner to file a *fourth* case during that time. He believes that the statute, in referring to dismissals "on 3 or more *prior* occasions," 28 U. S. C. §1915(g) (emphasis added), means that a trial court dismissal qualifies as a strike only if it occurred in a prior, *different*, lawsuit.

We need not, and do not, now decide whether the Solicitor General's interpretation (or some other interpretation with the same result) is correct. That is because Coleman

is not here appealing from a third-strike trial-court dismissal. He is appealing from the denial of *in forma pauperis* status with respect to several separate suits filed after the trial court dismissed his earlier third-strike suit. With respect to those suits, the earlier dismissals certainly took place on "prior occasions." If and when the situation that Coleman hypothesizes does arise, the courts can consider the problem in context.

\*     \*     \*

For the reasons stated, we hold that a prisoner who has accumulated three prior qualifying dismissals under §1915(g) may not file an additional suit *in forma pauperis* while his appeal of one such dismissal is pending. The judgments of the Court of Appeals are

*Affirmed.*