NONPRECEDENTIAL DISPOSITION

To be cited only in accordance with Fed. R. App. P. 32.1

# United States Court of Appeals

### For the Seventh Circuit
### Chicago, Illinois 60604

Submitted March 8, 2017[*]
Decided June 5, 2017

Before

WILLIAM J. BAUER, *Circuit Judge*

FRANK H. EASTERBROOK, *Circuit Judge*

ILANA DIAMOND ROVNER, *Circuit Judge*

| | |
|---|---|
| No. 15-3325 | Appeal from the United States District Court for the Central District of Illinois. |
| ANTHONY WHEELER,<br> *Plaintiff-Appellant,* | |
| *v.* | No. 12-2281 |
| PAUL A. TALBOT, KEITH ANGLIN, and YOLANDE JOHNSON,<br> *Defendants-Appellees.* | David G. Bernthal, *Magistrate Judge.* |

**Order**

In this action under 42 U.S.C. §1983, Anthony Wheeler contends that two defendants violated the First Amendment by threatening to punish him if he continued to file grievances and mail letters about "some of the day-to-day activity" at the prison, and that a third violated the Eighth Amendment by refusing to treat his keloids. The claims

---

[*] We have concluded that the briefs and record adequately present the issues and that oral argument is unnecessary. See Fed. R. App. P. 34(a)(2)(C).

are unrelated and were improperly joined; the district court should have severed them or dismissed one claim. See Fed. R. Civ. P. 18; *George v. Smith*, 507 F.3d 605 (7th Cir. 2007). Instead of doing that, the court (acting through a magistrate judge on the parties' consent, see 28 U.S.C. §636(c)) granted summary judgment to both sets of defendants. Resolving both claims in a single suit did not prejudice anyone other than the United States Treasury, which has been deprived of an extra filing fee, and is not a jurisdictional problem, so we turn to the merits.

We start with the claim under the First Amendment. After arriving at Danville Correctional Center, Wheeler began filing intra-prison grievances and writing letters to state and federal officials. He related that he complained about the food, which he says led to swelling, pain, dizziness, and vomiting. Construed in the light favorable to him, evidence shows that Keith Anglin (the prison's warden) and Yolande Johnson (deputy director for the Department of Corrections' central district) summoned Wheeler to a meeting and threatened to punish him or confiscate his typewriter if he continued filing grievances and writing to public officials. After this meeting, Wheeler filed a grievance against both Anglin and Johnson. Wheeler tells us that he has continued to file grievances and send letters and that, so far, Anglin and Johnson have not carried out their threats. Wheeler contends that, despite the lack of action, the threats cause him emotional distress, for which he seeks damages.

In the world outside of prison, threats to penalize speech are usually understood as attempts by the government to exercise prior restraint, a classic violation of the First Amendment. See, e.g., *Surita v. Hyde*, 665 F.3d 860, 878 (7th Cir. 2011); *Fairley v. Andrews*, 578 F.3d 518, 525 (7th Cir. 2009). But prisoners' rights to speak are subject to restrictions to promote legitimate public interests. See, e.g., *Saxbe v. Washington Post Co.*, 417 U.S. 843 (1974); *Hammer v. Ashcroft*, 570 F.3d 798 (7th Cir. 2009) (en banc). The propriety of some limitations on prisoners' speech also means that damages are unavailable unless caselaw clearly establishes that particular limitations have become excessive. See, e.g., *White v. Pauly*, 137 S. Ct. 548 (2017) (describing qualified-immunity doctrine). Wheeler's narration implies that Anglin and Johnson were more concerned by the volume of Wheeler's grievances than by their contents. Wardens and other administrators may try to conserve their time by cutting down the flux of repetitious complaints in order to focus on new and potentially serious ones.

Wheeler does not try to show how it has become clearly established that prison officials are forbidden to try to prevent prisoners from bombarding the grievance system and public officials with repetitious protests. Indeed, even though Anglin and Johnson invoke the doctrine of qualified immunity, Wheeler did not mention it in his opening brief and did not file a reply brief. But we need not pursue that subject, because he has

not established an entitlement to damages. It is not simply that the threats failed to deter him and were never carried out. It is that he seeks damages for mental distress, which runs smack into 42 U.S.C. §1997e(e). This statute provides that "[n]o Federal civil action may be brought by a prisoner confined in a jail, prison, or other correctional facility, for mental or emotional injury suffered while in custody without a prior showing of physical injury". Wheeler does not say that Anglin's or Johnson's threats caused him physical injury, so he cannot recover compensatory damages for emotional injury.

We held in *Calhoun v. DeTella*, 319 F.3d 936, 940 (7th Cir. 2003), that despite the opening clause of §1997e(e)—"[n]o Federal civil action may be brought"—the statute does not block the filing of actions and permits the physical injury to be shown while the suit is under way. Moreover, because the statute does not make physical injury a precondition to the award of punitive damages, it cannot logically be understood as forbidding the initiation of suit until physical injury has been demonstrated. But Wheeler has never tried to show physical injury and could not plausibly claim punitive damages, given the authority of wardens and other administrators to impose reasonable limits on prisoners' speech. See, e.g., *Thornburgh v. Abbott*, 490 U.S. 401, 409–14 (1989); *Turner v. Safley*, 482 U.S. 78, 91 (1987). Nor has Wheeler established an entitlement to other relief, such as an injunction. His complaint seeks equitable relief but his appellate brief does not mention that remedy, which forfeits the issue. Indeed, his appellate treatment of the First Amendment—about two-thirds of a single page—is so superficial that it effectively forfeits the claim. Because §1997e(e) prevents an award of damages for the First Amendment claim in this case, we need not discuss the merits of Wheeler's theory.

Now for the Eighth Amendment claim. Wheeler contends that the prison's medical director, Dr. Paul Talbot, refused to remove his keloids surgically. (A keloid is an area of irregular fibrous tissue formed at the site of a scar or injury.) Wheeler spoke to Talbot four times between December 2011 and October 2013 about itching, oozing, tenderness, and pain in his keloids. Before each of these visits, nurses provided Wheeler with oral and topical treatments to relieve any pain from the keloids.

The subject first arose during a hemorrhoid exam, and Talbot did nothing then. The second time, Wheeler asked to have a two-year-old keloid removed from his chest. Talbot gave the keloid a "cursory glance" and found intact skin and no signs of infection, distress, or drainage. The third time, Talbot evaluated Wheeler's keloids and found no open wounds or evidence of rubbing; he concluded that the keloids were cosmetic blemishes that posed no risk of harm. The final time, Talbot found that all of Wheeler's keloids were small and had intact skin without redness. He again concluded (and told Wheeler) that they were purely cosmetic blemishes.

In this litigation Talbot attested without contradiction that surgical removal of Wheeler's keloids was not advisable because of the "high risk" of their recurrence and because they appeared smooth and without signs of trauma, discoloration, or infection.

We agree with the district court that no rational jury could conclude that Wheeler's keloid condition was a serious medical problem to which Wheeler was deliberately indifferent. See *Farmer v. Brennan*, 511 U.S. 825, 837 (1994); *Petties v. Carter*, 836 F.3d 722, 728 (7th Cir. 2016) (en banc). Talbot examined the keloids several times and found no signs of infection, oozing, bleeding, or trauma. Although Wheeler says that the keloids bled and oozed at other times, he does not contradict Talbot's statements that they were intact during the several exams. Because those exams reasonably suggested to Talbot that the keloids were cosmetic problems only, Wheeler could not persuade a rational jury that surgery was medically advisable, let alone that a serious condition had been ignored. See *Petties*, 836 F.3d at 733; *Pyles v. Fahim*, 771 F.3d 403, 409 (7th Cir. 2014). Wheeler's pain did require treatment, see *Conley v. Birch*, 796 F.3d 742, 747 (7th Cir. 2015); *Greeno v. Daley*, 414 F.3d 645, 655 (7th Cir. 2005), but he received that. Although Wheeler contends that surgery would have been more efficacious than the medicine the nurses provided, nothing in the record supports that contention.

Before closing we must discuss Wheeler's litigation history. He has bombarded the federal courts as well as prison administrators. Wheeler filed and lost at least 14 federal suits before this one (which itself is two suits improperly joined). The district court required Wheeler to list all of his previous suits and disclose whether any of them is a "strike" for the purpose of 28 U.S.C. §1915(g), which requires prisoners to prepay the full docket fees if they have filed and lost three or more frivolous suits. Wheeler did not answer correctly. He disclosed only 10 of his earlier suits and failed to notify the district court that in 3 of the 14 the district judge had stated expressly that the suit qualified as a strike. See *Wheeler v. Walker*, No. 05 C 4403 (N.D. Ill.) (suit listed but strike not disclosed); *Wheeler v. Montes*, No. 08-3035 (C.D. Ill.) (suit not listed; strike not disclosed); *Wheeler v. Merchant*, 09-C-114 (S.D. Ill.) (suit listed but strike not disclosed). "A litigant who knows that he has accumulated three or more frivolous suits or appeals must alert the court to that fact." *Ammons v. Gerlinger*, 547 F.3d 724, 725 (7th Cir. 2008). Wheeler did not do so, and as a result both the district court and this court allowed him to litigate *in forma pauperis*.

Had he provided the required information, Wheeler might have contended that the strike assessed by the district judge in *Merchant* was improper. A suit can be deemed frivolous under the statute only when the judge dismisses the *entire* suit on that ground, see *Turley v. Graetz*, 625 F.3d 1005, 1012 (7th Cir. 2010), which did not happen in *Merchant*. But by keeping the district judge in the dark, Wheeler thwarted the sort of inquiry

that would have revealed whether he is entitled to proceed without prepayment of the required fees. A litigant must present issues candidly to the judge and may not presume that, because (in the litigant's view) a judge should rule in his favor, he is entitled to keep the judge in ignorance.

Wheeler's dishonesty has frustrated the administration of §1915 in both the district court and this court. Wheeler was allowed to litigate this suit, including the appeal, without prepayment of filing fees, but those fees are nonetheless due. He must now pay the fees due in both courts. Until he does so, he may not litigate *in forma pauperis* in any court of this circuit. And Wheeler must understand—and report to the courts in any future litigation—that he has at least two statutory strikes, and that litigation *in forma pauperis* will be curtailed by §1915(g) if he acquires a third. He may already have a third: a frivolous appeal, no less than a frivolous suit, qualifies as a strike. See *Coleman v. Tollefson*, 135 S. Ct. 1759 (2015) (discussing the operation of §1915(g)). We have not analyzed the appeals in all 14 of Wheeler's suits, but perhaps one or more of them counts as a strike. Wheeler must make full disclosure about both his suits and his appeals in any future litigation.

AFFIRMED