# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**FILED**

February 20, 2020

No. 18-20278

Lyle W. Cayce
Clerk

ARTRAI TURONE ALEXANDER,

      Plaintiff - Appellant

v.

TEXAS DEPARTMENT OF CRIMINAL JUSTICE; ROCKY N. MOORE, Texas Department of Criminal Justice Ferguson Unit Warden; THE FERGUSON UNIT, Texas Department of Criminal Justice; WARDEN KEVIN BELT, Texas Department of Criminal Justice Ferguson Unit Assistant Warden; LINCOLN CLARK, Texas Department of Criminal Justice Ferguson Unit Assistant Warden; ROBERT JENNINGS, Texas Department of Criminal Justice Ferguson Unit Captain; ROXANNE SIMON, Texas Department of Criminal Justice Ferguson Unit Counsel Substitute; DOVIER TURNER, Texas Department of Criminal Justice Ferguson Unit Investigator; CHRISTOPHER HOWETH, Texas Department of Criminal Justice Ferguson Unit Major; MICHAEL BATES, Texas Department of Criminal Justice Ferguson Unit Major; ROBERT JENKINS, JR., Texas Department of Criminal Justice Ferguson Unit Warden; GERALD JOZWIAK, Texas Department of Criminal Justice Ferguson Unit Investigator; JAMES MCKEE, Texas Department of Criminal Justice Ferguson Unit Assistant Warden; YOLANDA JONES, Texas Department of Criminal Justice Ferguson Unit Access to Courts (ATC) Supervisor,

      Defendants - Appellees

Appeal from the United States District Court
for the Southern District of Texas

Before WIENER, HIGGINSON, and HO, Circuit Judges.

No. 18-20278

PER CURIAM:

Artrai Turone Alexander, Texas prisoner # 2054329, appeals the district court's dismissal of his 42 U.S.C. § 1983 complaint as frivolous under 28 U.S.C. § 1915(e)(2)(B)(i). We review the district court's decision for abuse of discretion. *See Geiger v. Jowers*, 404 F.3d 371, 373 (5th Cir. 2005) (per curiam). We affirm.

I.

Alexander is a prisoner in Texas and no stranger to the American court system. He has filed repeated suits for habeas corpus and for alleged deprivations of his rights under 42 U.S.C. § 1983. In his most recent legal action, and the subject of this appeal, Alexander filed a pro se § 1983 complaint against various members of the Ferguson Unit of the Texas Department of Criminal Justice ("TDCJ").

The allegations stem primarily from the aftermath of a prison riot on December 7, 2016. That day, prison officers and inmates were embroiled in a physical altercation in the mess hall, where Alexander was present. A gas agent was eventually dispersed to control the situation, which involved some two hundred inmates who were all on their feet.

After the incident, Warden Rocky Moore directed Alexander to be moved to closed custody, where he remained for twelve days from December 7 to December 19. Alexander alleges the cell was infested with roaches and contained dead roaches and rat droppings. He relayed information about the condition of the cell to several officers on shift, who registered his complaints on the maintenance docket.

Alexander faced a disciplinary proceeding for his involvement in the December 7 incident. Counsel Substitute Roxanne Simon was appointed to represent Alexander at the hearing, which was conducted by Captain Robert

No. 18-20278

Jennings on December 19.  Jennings found sufficient evidence to support the charges of participating in the riot and creating a dangerous environment.  He imposed a punishment of forty-five days of cell restriction, forty-five days of commissary restriction, loss of 350 days of good time credits, no contact visits for four and a half months, closed custody lockdown confinement for one year, and a demotion in line classification.

As a result of this finding, Assistant Warden Lincoln Clark conducted a hearing the next day, at which he changed Alexander's prisoner classification from "G2" to "G5," a status that labelled Alexander as an offender with assaultive and aggressive disciplinary problems.

Apart from the riot incident, Alexander also maintains that Access to Courts Supervisor Yolanda Jones refused to provide the legal materials he requested for over two weeks despite being informed that they were necessary for a court deadline, and that he was deprived of access to the law library.

In response to these actions, Alexander alleged: (1) denial of his right of access to the courts; (2) denial of due process regarding his disciplinary conviction; (3) denial of due process regarding the treatment of his grievances; (4) denial of due process regarding reclassification of his custodial status; (5) retaliation; and (6) cruel and unusual punishment based on unsanitary conditions of confinement.  He sought compensatory damages, punitive damages, a declaratory judgment, and injunctive relief.

The district court granted Alexander's request to proceed *in forma pauperis* ("IFP").  It later concluded, on the merits, that the complaint lacked an arguable basis in law and dismissed all claims as frivolous.  At the time the district court entered final judgment, two of Alexander's previous § 1983 suits had already been dismissed as frivolous.  *See Alexander v. Dallas Cty. Police Dep't*, No. 3:16-CV-3304 (N.D. Tex. Mar. 24, 2017), ECF TXND 3:16-CV-3304,

No. 18-20278

16; *Alexander v. Tex. Dep't of Criminal Justice*, No. 4:16-CV-3520 (S.D. Tex. Nov. 28, 2017), ECF TXSD 4:16-CV-3520, 37.

Alexander now appeals. He again requested to proceed IFP, which the district court again granted. He further requested the appointment of appellate counsel, which the district court denied. Alexander challenges the district court's ruling on the appointment of counsel, as well as the dismissal of his substantive claims.

II.

First, Alexander argues he was denied access to the courts. In the district court, he asserted that Supervisor Jones' refusal to provide legal materials, in addition to inadequate access to the law library, undermined his ability to litigate his pending cases and resulted in losing his case against Dallas County in No. 3:16-CV-3304. To prevail on a denial-of-access claim, an inmate must demonstrate *actual injury* by showing "that the alleged shortcomings in the library or legal assistance program hindered his efforts to pursue a legal claim." *Lewis v. Casey*, 518 U.S. 343, 351 (1996). The record here, however, shows that Alexander's complaint was dismissed because it was found to be frivolous. S*ee* ECF TXND 3:16-CV-3304, 10, pp. 2–5 (concluding in magistrate judge's report and recommendation that Alexander's claims were barred by *Heck v. Humphrey*, 512 U.S. 477 (1994), or otherwise were not cognizable § 1983 claims); *see also* ECF TXND 3:16-CV-3304, 15 (district court order accepting magistrate judge's report and recommendation). The district court thus determined that Alexander failed to demonstrate any prejudice or actual harm for his access-to-courts claim, a conclusion which Alexander does not challenge on appeal. Instead, he now argues that he lost a separate case against the TDCJ, No. 4:16-CV-3520, because he was denied materials to litigate *that* case. This argument is raised for the first time on appeal, and

4

thus barred. *See Hannah v. United States*, 523 F.3d 597, 600 n.1 (5th Cir. 2008). Alexander has therefore failed to carry his burden to show that the district court abused its discretion in determining that he failed to demonstrate an actual injury in support of his access-to-courts claim.

Second, Alexander argues that TDCJ personnel failed to assist him adequately in his disciplinary hearing in front of Captain Jennings, resulting in a due process violation. To establish a due process violation, an inmate must show that he was deprived of a protected liberty or property interest. *See Sandin v. Conner*, 515 U.S. 472, 483–84 (1995). Appellant does not adequately brief any argument contesting the district court's conclusion that his disciplinary conviction did not implicate a constitutionally-protected liberty or property interest. He has thus waived any such argument and has failed to demonstrate an abuse of discretion regarding that claim.

Third, the district court did not abuse its discretion in dismissing Alexander's claim that his grievances were mishandled or improperly denied, as prisoners have no due process rights in the inmate grievance process. *See Geiger*, 404 F.3d at 374 (holding an inmate "does not have a federally protected liberty interest in having these grievances resolved to his satisfaction").

Fourth, Alexander contends that his due process rights were violated when Assistant Warden Clark reclassified him to G5 status, an allegedly-biased act since Clark was involved in the December 7 mess hall incident. The district court dismissed this claim on the ground that prisoners do not have a constitutionally-protected liberty interest in any particular custodial classification. *See Harper v. Showers*, 174 F.3d 716, 719 (5th Cir. 1999 ("Inmates have no protectable property or liberty interest in custodial classifications.") (internal quotations and citation omitted). And while an inmate may maintain a due process challenge to a custodial reclassification

that results in a transfer to lockdown, a prisoner must demonstrate "extraordinary circumstances" by showing that the change in classification "imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Hernandez v. Velasquez*, 522 F.3d 556, 562 (5th Cir. 2008) (per curiam) (internal quotations and citation omitted). Alexander's allegations about the conditions of his one-year lockdown are comparable to those in *Hernandez* and do not show that his lockdown was so harsh that it posed an atypical or significant hardship. *See id.* at 563–64 (finding lockdown confinement in a shared cell for one year with permission to leave only for showers, medical appointments, and family visits was "comparable to, if not less severe than those found unactionable in other cases"). Alexander's argument thus fails.

Fifth, Alexander argues TDCJ officials impermissibly retaliated against him in response to his protests against the Ferguson unit and his pending lawsuits against TDCJ. "To prevail on a claim of retaliation, a prisoner must establish (1) a specific constitutional right, (2) the defendant's intent to retaliate against the prisoner for his or her exercise of that right, (3) a retaliatory adverse act, and (4) causation." *McDonald v. Steward*, 132 F.3d 225, 231 (5th Cir. 1998). Alexander again fails to adequately brief a challenge to the district court's determination that his allegations were insufficient to show that any of the defendants knew of his complaints or grievances against them, much less that their actions were motivated by his protected activity.

We next address Alexander's claim that unsanitary cell conditions violated the Eighth Amendment's prohibition against cruel and unusual punishment. To make a constitutional claim based on unsanitary cell conditions, a prisoner must show not only that the conditions were objectively "so serious as 'to deprive prisoners of the minimal civilized measure of life's

necessities,'" *Woods v. Edwards*, 51 F.3d 577, 581 (5th Cir. 1995) (quoting *Harris v. Angelina County*, 31 F.3d 331, 334 (5th Cir. 1994)), but also that "the responsible prison officials acted with deliberate indifference to his conditions of confinement," *Harper*, 174 F.3d at 720.  To establish deliberate indifference, the prisoner must show that the prison official knew of and disregarded an excessive risk to inmate health or safety.  *Farmer v. Brennan*, 511 U.S. 825, 837 (1994).  That is, the prisoner must show both that (1) the official was aware of facts from which the inference could be drawn that a substantial risk of serious harm existed, and (2) the official drew the inference.  *Id.*  "But an official's failure to alleviate a significant risk that he should have perceived but did not . . . cannot under our cases be condemned as the infliction of punishment."  *Id.* at 838.

The district court concluded that the alleged cell conditions were not so harsh as to rise to the level of a constitutional violation.  And in any event, Alexander's claim is meritless because he failed to allege that any of the defendants knew of and ignored the condition of the cell.  While Alexander reported the cell conditions to officers on shift, he cannot make the requisite showing that they *in fact* "drew the inference" that there was a substantial risk of serious harm.

Finally, we deny Alexander's request for appointment of counsel on appeal.  This court may appoint counsel in civil rights suits under exceptional circumstances.  *Cooper v. Sheriff, Lubbock County*, 929 F.2d 1078, 1084 (5th Cir. 1991).  Alexander's case presents no such circumstances.

## III.

The district court's dismissal of Alexander's instant case as frivolous counts as one strike for purposes of 28 U.S.C. § 1915(g), and Alexander has two other strikes because his cases were dismissed as frivolous in *Alexander v.*

No. 18-20278

*Dallas Cty. Police Dep't*, No. 3:16-CV-3304 (N.D. Tex. Mar. 24, 2017), and *Alexander v. Tex. Dep't of Criminal Justice*, No. 4:16-CV-3520 (S.D. Tex. Nov. 28, 2017). *See* 28 U.S.C. § 1915(g); *Coleman v. Tollefson*, 135 S. Ct. 1759, 1763 (2015).

Because Alexander has accumulated at least three strikes under § 1915(g), he is now barred from proceeding IFP in any civil action or appeal filed while he is incarcerated or detained in any facility unless he is under imminent danger of serious physical injury.[1]

Alexander is warned that frivolous, repetitive, or otherwise abusive filings will invite the imposition of additional sanctions, which may include dismissal, monetary sanctions, and restrictions on his ability to file pleadings in this court and any court subject to this court's jurisdiction. Alexander is further warned that he should review any pending appeals and actions and move to dismiss any that are frivolous.

AFFIRMED; MOTION FOR APPOINTMENT OF COUNSEL DENIED; § 1915(g) BAR IMPOSED; SANCTION WARNING ISSUED.

---

[1] Defendants here could have argued that this appeal should not have proceeded IFP, on the theory that the district court dismissal of this case as frivolous counts as Alexander's third strike, even though that judgment is pending in this very appeal. Our court rejected such an argument in *Adepegba v. Hammons*, 103 F.3d 383 (5th Cir. 1996)—we stated that "[a] dismissal should not count against a petitioner until he has exhausted or waived his appeals." *Id.* at 387. But the Supreme Court subsequently held in *Coleman v. Tollefson*, 135 S. Ct. 1759 (2015), that "courts *must* count the dismissal even though it remains pending on appeal." *Id.* at 1761 (emphasis added). That said, *Coleman* involved a district court dismissal that remained pending in a *different* appeal. *See also id.* at 1764–65 ("Coleman is not here appealing from a third-strike trial-court dismissal. . . . If and when the situation that Coleman hypothesizes does arise, the courts can consider the problem in context."). So the IFP question presented here is an open one in our circuit.

Because the State did not challenge Alexander's IFP status in this appeal, we decide this case on the merits, and assume—without deciding—that he is entitled to treatment as a pauper. *See Davidson v. Buchanan*, 137 F. App'x 659, 661 (5th Cir. 2005) (per curiam) (declining to address plaintiff's IFP status because it was "unchallenged").

JAMES C. HO, Circuit Judge, concurring:

The district court found this to be a frivolous case. What's more, it is the third time a federal court has deemed an action by the plaintiff here frivolous—triggering the "three strikes" rule under the Prison Litigation Reform Act. A prisoner with three strikes may not bring an action or appeal *in forma pauperis* ("IFP"), except in cases of imminent danger of serious physical injury. Under the plain terms of 28 U.S.C. § 1915, this prohibition on IFP appeals applies even where, as here, the third strike is the very subject of the appeal.

The defendants did not object to IFP status in this appeal, so I join the per curiam decision affirming the district court on the merits. But I write separately to spell out the terms of the PLRA, out of respect for Congress's directive to the courts to deny IFP status to repeat frivolous claimants, and to instead focus our limited resources on litigants with worthier claims.

## I.

Congress enacted the nation's first IFP statute in 1892 "to ensure that indigent litigants have meaningful access to the federal courts," by having their "filing fees and court costs . . . assumed by the public." *Neitzke v. Williams*, 490 U.S. 319, 324 (1989). That enactment has led, however, to the proliferation of frivolous and wasteful IFP suits. Frivolous lawsuits and appeals are not only a waste of limited resources—they divert valuable judicial time and attention away from the resolution of more worthy disputes. And prison inmates, armed with the ability to file repeated suits IFP under 28 U.S.C. § 1915, are responsible for much of the problem. *See, e.g., Roller v. Gunn*, 107 F.3d 227, 230 (4th Cir. 1997) ("In 1995, prisoners brought over 25% of the civil cases filed in the federal district courts. In this circuit alone, IFP filings accounted for almost half of the court's 1995 caseload, and prisoners were responsible for 75% of those filings.") (citations omitted).

In response, Congress enacted the Prison Litigation Reform Act in 1996. The PLRA revised the federal IFP statute to require a prisoner to execute an affidavit attesting to his poverty and to file a certified copy of his prison trust account in order to obtain IFP status.  28 U.S.C. § 1915(a)(1) & (2).  If IFP status is granted, the prisoner is excused from pre-paying the full amount of the applicable filing and docketing fees.  *Id.* § 1915(b)(1).  Instead, the inmate may break up the expense—he can pay a portion of the total fee upfront, and then make monthly payments from his prison trust fund until the full amount is satisfied.  *Id.* § 1915(b)(2).  By requiring the prisoner to pay the necessary fees—albeit on an installment plan—the PLRA addresses the reality that a "litigant whose filing fees and court costs are assumed by the public, unlike a paying litigant, lacks an economic incentive to refrain from filing frivolous, malicious, or repetitive lawsuits."  *Neitzke*, 490 U.S. at 324.

Most relevant here, the PLRA also implemented a "three strikes" rule that "limits a prisoner's ability to proceed I.F.P. if the prisoner abuses the judicial system by filing frivolous actions."  *Abdul-Akbar v. McKelvie*, 239 F.3d 307, 312 (3d Cir. 2001) (en banc).  Specifically, § 1915(g) provides that a prisoner who accrues three strikes for filing frivolous actions or appeals is thereby barred from proceeding IFP in the future, unless he can show imminent threat of physical injury:

> In no event shall a prisoner bring a civil action or appeal a judgment in a civil action or proceeding under this section if the prisoner has, *on 3 or more prior occasions*, while incarcerated or detained in any facility, *brought an action or appeal* in a court of the United States that was dismissed on the grounds that it is *frivolous, malicious, or fails to state a claim upon which relief may be granted*, unless the prisoner is under imminent danger of serious physical injury.

28 U.S.C. § 1915(g) (emphasis added).

II.

This appeal should not have been brought IFP.  The district court found this case to be frivolous.  It is the third time an action by the plaintiff has been deemed frivolous.  And under the plain text of 28 U.S.C. § 1915(g), that should have barred the plaintiff from bringing this IFP appeal.

In *Coleman v. Tollefson*, 135 S. Ct. 1759 (2015), the prisoner filed multiple federal lawsuits, three of which had been dismissed for failure to state a claim.  *Id.* at 1762.  As he was in the process of appealing his third dismissal, he concurrently filed additional lawsuits, and requested IFP status in each. *Id.*  Coleman argued that his third dismissal could not yet count as a "prior occasion" until the conclusion of any and all appeals from that dismissal.

The Supreme Court unanimously disagreed.  "Linguistically speaking, we see nothing about the phrase 'prior occasions' that would transform a dismissal into a dismissal-plus-appellate-review." *Id.* at 1763.  Under the plain language of the text, the Court concluded that a "prior dismissal on a statutorily enumerated ground counts as a strike even if the dismissal is the subject of an appeal.  That, after all, is what the statute literally says." *Id.* The word "occasion," the Court explained, is normally understood to be "a particular occurrence," a "happening," or an "incident." *Id.* (quoting dictionary definitions).  A district court dismissal and a subsequent appeal are discrete events and thus different "occasions."

This conclusion is further reinforced by surrounding statutory text.  The statute turns on whether a prisoner has "on 3 or more prior occasions . . . brought an action *or* appeal" that resulted in a strike under 28 U.S.C. § 1915(g) (emphasis added).  So the statute itself makes clear that *either* an action "or" an appeal may constitute a "prior occasion." *Id.*  In addition, the "text provides that the relevant 'occasion' is the *bringing* of the action or

11

appeal"—and a district court proceeding and subsequent appeal are "necessarily 'brought' on two different occasions." *Taylor v. Grubbs*, 930 F.3d 611, 623 (4th Cir. 2019) (Richardson, J., dissenting). And the Supreme Court has noted that, when an action is "dismissed" in the district court, that "linguistic term," "taken alone, does not normally include subsequent appellate activity." *Coleman*, 135 S. Ct. at 1763.

So an action in district court and a subsequent appeal of the district court judgment are necessarily separate "occasions." And there is no question that the district court judgment under review here is a "prior" occasion, since it necessarily precedes this appeal. *See, e.g.*, *Prior*, WEBSTER'S NEW INTERNATIONAL DICTIONARY (2d ed. 1934) ("prior" means "preceding in the order of time," or "earlier, and therefore taking precedence").

To be sure, this case presents a slightly different factual situation than *Coleman*. In both instances, the potential third strike arises from a district court judgment that is pending on appeal. But in *Coleman*, the Court denied IFP status to the prisoner in *other* cases during the pendency of that appeal. This case, by contrast, involves IFP status in that very same appeal.

The Supreme Court reserved judgment on the factual circumstances presented here. *Coleman*, 135 S. Ct. at 1764–65. But the logic of the Court's textual analysis readily applies in these situations: A "prior dismissal on a statutorily enumerated ground counts as a strike even if the dismissal is the subject of an appeal. That, after all, is what the statute literally says." *Id.* at 1763. And that is so whether we are applying the third strike analysis to an entirely separate case (as in *Coleman*) or to the appeal of the same underlying case (as here).

Accordingly, I agree with the Third and Seventh Circuits that the PLRA bars prisoners in Alexander's position from proceeding IFP on appeal. *See*

*Parker v. Montgomery Cty. Corr. Facility*, 870 F.3d 144, 146 (3d Cir. 2017) (denying IFP status under similar circumstances "based upon the plain text of the statute, and guided by the Supreme Court's reasoning in *Coleman*"); *Robinson v. Powell*, 297 F.3d 540, 541 (7th Cir. 2002) (holding that authorizing an IFP appeal in this situation was "contrary to the language of the statute").

## III.

A previous panel of this court reached the opposite conclusion. In *Adepegba v. Hammons*, 103 F.3d 383 (5th Cir. 1996), we concluded that "[a] dismissal should not count against a petitioner until he has exhausted or waived his appeals." *Id.* at 387. But that was decades before the Supreme Court stated the opposite proposition in *Coleman*—namely, that "courts *must* count the dismissal even though it remains pending on appeal." 135 S. Ct. at 1761 (emphasis added). *See Gahagan v. U.S. Citizenship & Immigration Servs.*, 911 F.3d 298, 302 (5th Cir. 2018) ("Fifth Circuit precedent is implicitly overruled if a subsequent Supreme Court opinion 'establishes a rule of law inconsistent with' that precedent.") (quoting *Gonzalez v. Thaler*, 623 F.3d 222, 226 (5th Cir. 2010)).

In addition, *Adepegba* relies on an absurdity argument that I find unconvincing and insufficient to override statutory text. To begin with, the panel in *Adepegba* acknowledged that "it is possible to read the statute" as I do today—after all, "section 1915(g) only requires that on three or more prior occasions a prisoner have had an action dismissed" as frivolous, and "does not proscribe any cure for erroneous dismissals." *Adepegba*, 103 F.3d at 387. The panel nevertheless set aside the text, and refused to count the district court judgment pending appeal as a strike, because it is "an extreme reading" and "an absurd result we cannot believe Congress intended." *Id.*

But it is hardly absurd for Congress to ignore what is undoubtedly the rarest of occurrences—where a district court finds a prisoner claim so unworthy as to be frivolous, and yet a court of appeals subsequently finds the claim not only non-frivolous, but deserving of relief. *See, e.g.*, Brief for Respondents at 48, *Coleman v. Tollefson*, 135 S. Ct. 1759 (2015) (No. 13-1333) ("[P]robability-wise, [this is] likely to be a very small subset of cases."). The absurdity canon does not allow us to warp statutory text to accommodate outlier circumstances. *See Shady Grove Orthopedic Assocs., P.A. v. Allstate Ins. Co.*, 559 U.S. 393, 414 n.13 (2010) ("The possible existence of a few outlier instances does not prove [that an] interpretation is absurd."); *cf.* RICHARD A. EPSTEIN, SIMPLE RULES FOR A COMPLEX WORLD 38–39 (1995) ("Simple rules . . . work most of the time, but are known and expected to fail some of the time," whereas "complex rules" are motivated by the "relentless, if naive, pursuit of perfection.").

Moreover, the danger of this anomalous third strike is a "risk that falls only on prisoners who have already demonstrated on three occasions a propensity to abuse the judicial system." Brief for Respondents at 42, *Coleman*. "There is nothing harsh"—much less absurd—"about subjecting such a prisoner to consequences for that continued abuse." *Id.* To the contrary, it's the whole point of the PLRA.

Nor do I find persuasive the reasoning of the three circuits that depart from the plain text interpretation adopted by the Third and Seventh Circuits.

The Ninth Circuit, for example, relied primarily on language from the Solicitor General's brief in *Coleman*. *See Richey v. Dahne*, 807 F.3d 1202, 1204 (9th Cir. 2015). But its opinion never confronts the textual analysis adopted by the Supreme Court in *Coleman*. Nor does it address the express textual distinction between "actions" and "appeals" under 28 U.S.C. § 1915(g).

Instead, the Ninth Circuit expressed policy concerns about "freez[ing] out meritorious claims or ossify[ing] district court errors." *Richey*, 807 F.3d at 1209 (quotations omitted).  But statutory interpretation is an exercise in reading, not writing.  Federal courts are not permitted to recraft statutes to suit judicial sensibilities.  *See Barnhart v. Sigmon Coal Co., Inc.*, 534 U.S. 438, 462 (2002) ("We will not alter the text in order to satisfy [] policy preferences . . . . These are battles that should be fought among the political branches and the industry.  Those parties should not seek to amend the statute by appeal to the Judicial Branch.").

The Tenth Circuit likewise reached its conclusion without any textual consideration.  It simply relied on its own circuit precedent, decided before *Coleman*, in a footnote in an unpublished opinion.  *See Dawson v. Coffman*, 651 F. App'x 840, 842 n.2 (10th Cir. 2016).

Finally, the Fourth Circuit (over a persuasive dissent by Judge Richardson) justified IFP status under these circumstances largely based on the surplusage canon.  *See Taylor*, 930 F.3d at 617.  The theory goes like this: Under our reading, there is no difference between "prior occasion" and "occasion"—after all, "a strike imposed on *any* occasion will *always* be 'prior' to a court's decision to grant or deny a motion to proceed *in forma pauperis*."  *Id.*

But that misreads the statute.  The statutory text states that courts must count findings of frivolousness "prior" to "a prisoner bring[ing] a civil action or appeal," 28 U.S.C. § 1915(g)—not prior to "a court's decision to grant or deny a motion to proceed *in forma pauperis*," as the Fourth Circuit panel majority suggests, *Taylor*, 930 F.3d at 617.  This distinction can make a difference in certain (albeit rare) cases.  Imagine the following situation:  A prisoner has accrued two strikes.  He files a new lawsuit and seeks IFP status.  He subsequently receives a third strike in a previously filed action or appeal.

Would that third strike result in a denial of IFP status in the new pending lawsuit? No: The third strike would be an "occasion" under the statute—but not one "prior" to the "prisoner bring[ing] a civil action or appeal." 28 U.S.C. § 1915(g).

So contrary to the Fourth Circuit's analysis, the word "prior" has substantive meaning. The Third Circuit has reached the same conclusion. *See Parker*, 870 F.3d at 153 ("In our view, the term 'prior' sets a temporal parameter, referring only to strikes accrued earlier in time than the notice of appeal. . . . Thus, in our view, 'prior' has meaning.").[2]

\* \* \*

Serial filers of frivolous lawsuits do a disservice, not only to themselves by wasting their IFP opportunities, but to all litigants who present worthwhile claims before the courts. Since Magna Carta, a cardinal principle of Anglo-American law is that justice will not be delayed. But consuming judicial resources with meritless appeals crowds out those with legitimate claims to redress.

Congress recognized this problem and took remedial steps to fix it when it enacted the PLRA. As judges, we are limited to interpreting statutes—not rewriting them to suit our own preferences or sense of justice. And Congress has made clear in the PLRA that prisoners may not proceed IFP on appeal

---

[2] Judge Richardson offers a different but powerful response to the majority's reliance on the surplusage canon. As he explains, "a court should not give a word an entirely fanciful meaning to avoid a minor redundancy." *Taylor*, 930 F.3d at 624 (Richardson, J., dissenting). "Instead of misreading 'prior,' we should just admit that Congress used a redundant word. That is hardly surprising: redundant uses of 'prior' abound." *Id.* at 625. For example, he noted that "the oft-used phrase 'prior experience' is usually redundant because almost all experience is 'prior.'" *Id.* "Even judicial opinions sometimes fall victim, for example by referring to someone's 'prior history.'" *Id.* (collecting cases). "Similarly, courts often refer to 'prior precedent' even though precedent is, quite literally, that which 'precedes.'" *Id.* (collecting cases).

following any three strikes, inclusive of the underlying district court action under review.  I respectfully concur.