**Jason PARKER, Appellant**

v.

**MONTGOMERY COUNTY CORRECTIONAL FACILITY/BUSINESS OFFICE MANAGER, In Their Official, Individual & Private; Julio Algarin Warden; Nancy T. McFarland, President; Anthony Bucci, Social Worker; Montgomery County; Montgomery County Correctional Facility; Prison Inspectors, In Their Individual, Official and Private Capac.**

**Jason Parker, Appellant**

v.

**Police Officer David O'Connor; Police Officerbrad Momme, #7631; Phila. Police Chief Charles Ramsey; Phila. Mayor Michael Nutter; Phila. Police Department; City of Philadelphia; Judge Angelo Foglietta; Governor of Penn., Tom Corbett, or Tom Wolf; Barack Obama, President of the United States; District Attorney Seth Williams; Eric H. Holder, Jr., U.S. Attorney General, and/or Loretta Lynch, In Their Official, Individual and Private Capacities**

No. 15–3449, No. 15–3451

United States Court of Appeals, Third Circuit.

Argued July 11, 2017

(Filed: August 29, 2017)

Ryan T. Becker, Esq. [ARGUED], Peter C. Buckley, Esq., Fox Rothschild, 2000 Market Street, 20th Floor, Philadelphia,

PA 19103, Counsel for Appellant Jason Parker

Philip W. Newcomer, Esq. [ARGUED], Montgomery County Solicitor's Office, One Montgomery Plaza, Suite 800, P.O. Box 311, Norristown, PA 19404, Counsel for Appellees Montgomery County Correctional Facility and County of Montgomery

Before: SMITH, Chief Judge,
FUENTES, Circuit Judge, and STARK, Chief District Judge *

### OPINION

SMITH, Chief Judge.

This appeal requires us to answer a question about the "three strikes rule" of the Prison Litigation Reform Act ("PLRA"), 28 U.S.C. § 1915(g), which was left unresolved by the Supreme Court in *Coleman v. Tollefson*, —— U.S. ——, 135 S.Ct. 1759, 191 L.Ed.2d 803 (2015): may an indigent prisoner appealing a District Court's imposition of his "third strike" proceed *in forma pauperis* ("IFP") for that appeal without demonstrating that he is in imminent danger of serious physical injury? We conclude, based upon the plain text of the statute, and guided by the Supreme Court's reasoning in *Coleman*, that we must answer this question in the negative. Accordingly, we will deny Parker's motion to proceed *in forma pauperis*.

### I.

Congress enacted the PLRA in an effort to stem a rising tide of prisoner suits flooding the federal court system. *See* Title VIII, Pub. L. No. 104–134, 110 Stat. 1321 (1996), amending 28 U.S.C. §§ 1915–1915A; *see also Woodford v. Ngo*, 548 U.S. 81, 84, 126 S.Ct. 2378, 165 L.Ed.2d 368

(2006); *Abdul–Akbar v. McKelvie*, 239 F.3d 307, 312 (3d Cir. 2001) (en banc). Because "Congress concluded that the large number of meritless prisoner claims was caused by the fact that prisoners easily obtained I.F.P. status and hence were not subject to the same economic disincentives to filing meritless cases that face other civil litigants," *Abdul–Akbar*, 239 F.3d at 312, the PLRA increases the economic burdens of civil litigation for prisoners.

Among other things, the PLRA requires a prisoner who files a civil complaint or appeal in federal court to pay the full amount of any applicable filing and docketing fees. 28 U.S.C. § 1915(b)(1). A prisoner who is indigent may be granted IFP status and thereby be excused from pre-payment of fees. IFP status does not, however, eliminate the filing and docketing fee obligations. Rather, it permits the prisoner to pay an initial partial fee followed by subsequent monthly installments until the fees are paid in full. *See* 28 U.S.C. § 1915(b)(1), (2).

█ In addition, the PLRA imposes the "three strikes rule," which "limits a prisoner's ability to proceed I.F.P. if the prisoner abuses the judicial system by filing frivolous actions." *Abdul–Akbar*, 239 F.3d at 312. The rule applies to those prisoners who are the most frequent filers of meritless civil suits and appeals in federal courts as follows:

> In no event shall a prisoner bring a civil action or appeal a judgment in a civil action or proceeding under this section if the prisoner has, on 3 or more prior occasions, while incarcerated or detained in any facility, brought an action or appeal in a court of the United States that

---

* Honorable Leonard P. Stark, Chief Judge of the United States District Court for the Dis-

trict of Delaware, sitting by designation.

was dismissed on the grounds that it is frivolous, malicious, or fails to state a claim upon which relief may be granted, unless the prisoner is under imminent danger of serious physical injury.

28 U.S.C. § 1915(g). "The 'three strikes' provision was 'designed to filter out the bad claims and facilitate consideration of the good.'" *Coleman*, 135 S.Ct. at 1764 (quoting *Jones v. Bock*, 549 U.S. 199, 204, 127 S.Ct. 910, 166 L.Ed.2d 798 (2007)).

## II.

Jason Parker, an indigent prisoner,[2] has been a prolific *pro se* litigant in the United States District Court for the Eastern District of Pennsylvania, where he initiated as many as forty civil matters over a relatively short period of time. For current purposes, we need focus on only three of those proceedings.

In late 2014, Parker filed a complaint in *Parker v. Nutter*, No. 2:14–cv–07113 (E.D. Pa.) ("*Nutter*"), in which he claimed that various officials subjected him to false arrest, malicious prosecution, and the use of excessive force in the course of his arrest in December 2011. He accompanied the complaint with a motion to proceed IFP. By order entered March 19, 2015, the District Court granted the IFP motion and considered the case pursuant to the PLRA's IFP screening provision, 28 U.S.C. § 1915(e), which directs a court to dismiss a case "at any time" if it determines that the "action or appeal is frivolous or malicious; fails to state a claim on which relief may be granted; or seeks monetary relief against a defendant who is immune from such relief." *Id.*

§ 1915(e)(2)(B)(i)–(iii). The District Court concluded that Parker's claims were barred by Pennsylvania's two-year statute of limitations and therefore dismissed the complaint with prejudice pursuant to § 1915(e)(2)(B)(ii). Parker did not appeal the dismissal.[3] This was Parker's first strike.

Parker's next strikes stem from two civil rights complaints that he filed in the summer of 2015, and which underlie the appeals before us. In the first complaint, *Parker v. O'Connor*, No. 2:15–cv–03475 (E.D. Pa.) ("*O'Connor*"), Parker claimed— as he had in *Nutter*—that officials subjected him to assault, false arrest, and malicious prosecution in the course of his December 2011 arrest. In the second complaint, *Parker v. Montgomery County Correctional Facility*, No. 2:15–cv–04205 (E.D. Pa.) ("*MCC*"), Parker claimed that prison officials interfered with his access to the courts by depriving him of prisoner account statements necessary to perfect IFP motions in his pending litigation. In both *O'Connor* and *MCC*, Parker moved to proceed IFP. He was initially denied that status without prejudice due to a failure to provide the required prisoner account statement, but in both cases, he later filed the necessary documents. The District Court then granted the IFP motions and screened both complaints pursuant to 28 U.S.C. § 1915(e)(2)(B).

On September 17, 2015, the District Court entered a memorandum opinion and order in each proceeding, dismissing them both. The District Court concluded that *O'Connor* was malicious "because it re-

---

2. Parker's six-month prisoner account statement, filed in October 2015 in support of his IFP motion, reflects a balance that is below the amount required for filing and docketing an appeal. It is almost certain that Parker is indigent and, but for the three strikes rule, would qualify for IFP status.

3. Parker filed an appeal from a subsequent post-judgment motion for the appointment of counsel, but the appeal was dismissed for failure to prosecute. *See Parker v. Nutter*, No. 15–3203 (3d Cir. dismissed Nov. 23, 2015).

peats previously litigated claims"—namely, the claims Parker had presented in *Nutter*. JA 12a. In addition, to the extent *O'Connor* included several additional defendants not previously named in *Nutter*, the District Court concluded that the claims against those defendants were frivolous because the new defendants did not have any involvement with the events giving rise to his claims. The District Court therefore dismissed *O'Connor* as frivolous, malicious, and for failure to state a claim pursuant to § 1915(e)(2)(B)(i) and (ii). This was Parker's second strike.[4]

In *MCC*, the District Court concluded that, because Parker eventually received the prisoner account statements he required, he could not establish any injury: "[h]e has not described any non-frivolous cases that he was prohibited from pursuing because he could not obtain his prison account statement." JA 19a–20a. Accordingly, the District Court dismissed *MCC* for failure to state a claim pursuant to § 1915(e)(2)(B)(ii) and, because it determined that amendment would be futile, did not grant leave to amend. This was Parker's third strike.

Parker timely filed these *pro se* appeals from the *O'Connor* and *MCC* judgments. Parker filed motions to proceed IFP in both matters, as well as motions for the appointment of counsel. Because the two dismissals are Parker's second and third

strikes under § 1915(g), the Clerk of this Court directed him to file a motion demonstrating imminent danger of serious physical injury. Parker complied.

Parker's IFP motions, counsel motions, and imminent danger motions were submitted to a panel of this Court. In response, the Court entered an order on March 24, 2016, which: (1) consolidated the appeals for briefing; (2) provisionally granted Parker's IFP motions, solely for the purpose of considering his counsel motions, and deferred assessment of the appeal fees[5]; (3) granted the counsel motions; (4) directed counsel to address, "in addition to any other issues counsel may wish to raise," the question left unanswered by *Coleman*, 135 S.Ct. at 1765, *i.e.*, "whether the IFP statute affords a prisoner IFP status with respect to an appeal from a third qualifying dismissal under § 1915"; and, finally, (5) referred the IFP and imminent danger motions to the merits panel.

Peter C. Buckley, Esq., and Ryan T. Becker, Esq., appeared as pro bono counsel for Parker.[6] Initially, because these appeals were from screening decisions made by the District Court prior to any defendant entering an appearance, no appellee participated in either matter. At the direction of the Court, the Clerk issued an order inviting Montgomery County to participate by way of a special appearance.[7]

---

4. Because the dismissals in *O'Connor* and *MCC* occurred on the same day, it is not possible to determine from the record which strike is technically Parker's second and which is his third. We refer in this opinion to *O'Connor* as the second strike and *MCC* as the third merely for expediency.

5. Our discussion in this opinion concerns Parker's ability to proceed IFP for purposes of avoiding the pre-payment of filing and docketing fees. We have no occasion today to review the correctness of the motion panel's earlier decision to provisionally grant Parker

IFP status for the purpose of the appointment of pro bono counsel.

6. We extend our gratitude to Mr. Buckley and Mr. Becker of Fox Rothschild LLP for donating their time and talent in accepting this pro bono appointment.

7. Montgomery County was not served in the underlying District Court proceeding, as the complaint was dismissed pursuant to § 1915(e) prior to service. The Clerk's order specified that participation in the appeal "will

The County accepted the invitation and filed a responsive brief.

■ At oral argument, counsel for Parker advised the Court that Parker has abandoned his appeal in *O'Connor*. That matter will therefore be dismissed in an accompanying order. Accordingly, only *MCC*—Parker's appeal of the District Court's imposition of his third strike—remains before us. And, before we may consider whether that appeal has merit, we must decide whether Parker is entitled to IFP status for his appeal, despite the three strikes imposed by the District Court.[8]

### III.

■ We consider *de novo* issues concerning the proper application of the three strikes rule. *See Millhouse*, 866 F.3d at 156-57. Because interpretation of that rule has undergone recent and substantial change, we first review some relevant history.

Several years ago, in *Ball v. Famiglio*, 726 F.3d 448, 464-65 (3d Cir. 2013), we held, among other things, that a strike does not accrue at the moment that a District Court dismisses a prisoner's complaint on an enumerated ground. Instead, we determined that a District Court's imposition of a strike "counts" for purposes of § 1915(g) only after that judgment has been affirmed on appeal or the window for pursuing an appeal has closed. Although the opposite outcome might have been more consistent with a "hyper-literal" reading of § 1915(g), we reasoned that to

hold otherwise would "risk inadvertently punishing nonculpable conduct" by preventing an appeal from an erroneous third-strike dismissal or by allowing a prisoner litigant's fourth claim to unfairly expire before an improperly awarded strike could be reversed on appeal. *Id.* at 465 (quoting *Jennings v. Natrona Cty. Det. Center Med. Facility*, 175 F.3d 775, 780 (10th Cir. 1999)). Our holding in *Ball* was consistent with decisions by the other Courts of Appeals to have considered the issue, including the Fifth, Tenth, and D.C. Circuits. *Id.* (citing cases).

Later that year, the United States Court of Appeals for the Sixth Circuit considered the same question and reached the opposite conclusion. André Lee Coleman, a Michigan prisoner, had filed three federal lawsuits that were dismissed on grounds enumerated in § 1915(g). While his appeal of the third dismissal was pending, he filed four new lawsuits, moving to proceed *in forma pauperis* in each. The District Court denied him IFP status pursuant to § 1915(g) and dismissed his complaints for failure to pay the applicable fees, concluding that a dismissal counts as a strike even while it is pending on appeal. The Sixth Circuit affirmed. *See Coleman v. Tollefson*, 733 F.3d 175, 177 (6th Cir. 2013). Recognizing that the Sixth Circuit's decision gave rise to a circuit split, the United States Supreme Court granted *certiorari*.

In a unanimous decision, the Supreme Court affirmed the Sixth Circuit's judgment, partially abrogating our analysis in *Ball* and marking a sea change in the interpretation of the three strikes rule.[9]

---

not be construed as consent to service or jurisdiction in any other respect."

**8.** During oral argument, counsel advised the Court that Parker was released from prison. Because the applicability of the three strikes rule is determined as of the date that the notice of appeal is filed, *Millhouse v. Heath*,

866 F.3d 152, 153-54 (3d Cir. 2017), and because Parker was a prisoner at that time, Parker's subsequent release does not impact our discussion of § 1915(g).

**9.** *Coleman* abrogates *Ball* only insofar as *Ball* addressed the issue of tabulating strikes while

*Coleman*, 135 S.Ct. 1759. The Court held that the literal reading of § 1915(g) that we had rejected in *Ball* is precisely what is required in deciding when a strike takes effect: "[a] prior dismissal on a statutorily enumerated ground counts as a strike even if the dismissal is the subject of an appeal. That, after all, is what the statute literally says." *Id.* at 1763.

Before the Supreme Court, Coleman argued that use of the phrase "prior occasion" in § 1915(g) gives rise to ambiguity because it "may refer to a single moment or to a continuing event: to an appeal, independent of the underlying action, or to the continuing claim, inclusive of both the action and its appeal." *Id.* The Supreme Court rejected Coleman's view, discerning no ambiguity. "Linguistically speaking, we see nothing about the phrase 'prior occasions' that would transform a dismissal into a dismissal-plus-appellate-review." *Id.*

According to the Supreme Court, the statute does not treat a qualifying dismissal as provisional pending appeal, but rather speaks only to whether an action or appeal "was dismissed"—a term that "does not normally include subsequent appellate activity" and which "describes ... an action taken by a single court, not ... a sequence of events involving multiple courts." *Id.* The Court reasoned that this literal reading is also supported by "the way in which the law ordinarily treats trial court judgments," inasmuch as a District Court's judgment takes immediate effect regardless of a pending appeal. *Id.* at 1764. In addition, the Court concluded that its interpretation comports with the purpose of § 1915(g): "The 'three strikes' provision was 'designed to filter out the bad claims and facilitate consideration of the good.' To refuse to count a prior dismissal because of a pending appeal would produce a leaky

an appeal is pending. *Ball*'s other holdings

filter." *Id.* (quoting *Jones*, 549 U.S. at 204, 127 S.Ct. 910).

The Supreme Court acknowledged that its interpretation creates a risk that a prisoner could be deprived of IFP status in suits filed after a District Court's erroneous imposition of a strike but before that strike's reversal on appeal. *Id.* But the Court observed that such reversals are rare and that the prisoner might be able to re-file or re-open his or her suit after the reversal in any event. *Id.* Coleman countered by arguing that this interpretation could give rise to a more concrete and substantial risk: it could deny a prisoner IFP status for, and therefore effectively bar appellate review of, the District Court's imposition of the prisoner's third strike.

The Solicitor General, who had filed an *amicus* brief supporting the literal reading of the statute ultimately adopted by the Court, agreed with Coleman that the ability to appeal the imposition of a third strike should be preserved. To that end, the Solicitor General offered an interpretation of the word "prior" that, he argued, could reach that result:

> The Solicitor General says that we can and should read the statute to afford a prisoner *in forma pauperis* status with respect to a *third* qualifying dismissal .... He believes that the statute, in referring to dismissals 'on three or more *prior* occasions,' means that a trial court dismissal qualifies as a strike only if it occurred in a prior, *different*, lawsuit.

*Id.* at 1765.

Because the question of a prisoner's ability to be granted IFP status for the purposes of his appeal of the imposition of a third strike was not directly before the Supreme Court, it declined to consider the issue. "We need not, and do not, now

remain undisturbed.

decide whether the Solicitor General's interpretation (or some other interpretation with the same result) is correct." *Id.*

Today, that issue is squarely before us.

### IV.

Since *Coleman*, the only Court of Appeals to have considered this question has concluded that a prisoner is entitled to IFP status while appealing his third strike dismissal. In *Richey v. Dahne*, 807 F.3d 1202 (9th Cir. 2015), the Ninth Circuit fully endorsed the interpretation of § 1915(g) that the Solicitor General put forth in *Coleman*, concluding that the phrase "prior occasions" refers to "strikes imposed in prior-filed suits, not . . . those imposed in an earlier stage of the same suit."[10] *Id.* at 1209.

The *Richey* Court's rationale for its holding was a desire to be consistent with "the way in which the law ordinarily treats trial court judgments." *Id.* (quoting *Coleman*, 135 S.Ct. at 1764). The Court reasoned, "[w]hile judgments are immediately preclusive as to successive suits, they are certainly not preclusive to the panel on appeal." *Id.* (citation omitted). In addition, the *Richey* Court observed that its rule would not run afoul of the Supreme Court's concern in *Coleman* about a "leaky filter," because it only permits the appeal of the third strike itself. *Id.*

In its brief analysis, which is noticeably lacking in discussion of the statutory language, the *Richey* Court appears to be primarily motivated by a policy consideration: a contrary rule would prevent courts of appeals from performing their "appellate function" by "freez[ing] out meritorious claims or ossify[ing] district court errors." *Id.* (quoting *Henslee v. Keller*, 681 F.3d 538, 543 (4th Cir. 2012)). The Ninth Circuit determined that such an outcome would be unfair, as exemplified in Richey's very case, because his third strike was, indeed, erroneously imposed:

> If Richey was not entitled to IFP status on appeal, he would have to pay the filing fee for us to reverse the district court's erroneous third strike, which would ironically make him eligible again for IFP status in successive suits. We do not think that Congress intended such a peculiar system.

*Id.*

Such perceived unfairness, rather than the language of § 1915(g) itself, appears to have driven the Ninth Circuit's decision.

### V.

■ We are not unsympathetic to the concerns that motivated the Ninth Circuit in *Richey*. Yet, as a Court of Appeals, we must adhere to the apparent intent of Congress as embodied in the language of § 1915(g). We must also adhere to *Coleman's* instruction to read that language

---

**10.** The Tenth Circuit has reached a similar conclusion, but only in unpublished decisions. *Dawson v. Coffman*, 651 Fed.Appx. 840, 842 n.2 (10th Cir. 2016) ("A dismissal would not be considered "prior" if it is the decision underlying the appeal."); *Burnett v. Miller*, 631 Fed.Appx. 591, 604 (10th Cir. 2015) (same). Pursuant to the Local Rules of the Tenth Circuit, an unpublished decision is not precedential. *See* 10th Cir. R. 32.1(A). The Tenth Circuit's decisions cite *Pigg v. FBI*, 106 F.3d 1497 (10th Cir. 1997) (per curiam), a pre-*Coleman* case that has not been reconsid-

ered in a post-*Coleman* precedential decision. We note that the Fourth Circuit, following *Pigg*, adopted the *Richey*-like view of "prior occasion" in *Henslee v. Keller*, 681 F.3d 538, 543 (4th Cir. 2012), and that the Sixth Circuit also did so in the decision that *Coleman* affirmed. *See Coleman*, 733 F.3d at 178 ("A third strike that is on appeal is not a prior occasion for the purposes of that appeal, because it is the same occasion."). Neither the Fourth Circuit nor the Sixth Circuit has, at the time of writing, commented on *Coleman's* effect on Circuit precedent.

literally. In light of these weighty considerations, we must respectfully reject the view espoused by the Ninth Circuit. "While we are generally reluctant to create circuit splits, we do so where a 'compelling basis' exists." *Karlo v. Pittsburgh Glass Works, LLC*, 849 F.3d 61, 75 n.7 (3d Cir. 2017) (quoting *Wagner v. PennWest Farm Credit, ACA*, 109 F.3d 909, 912 (3d Cir. 1997)). A compelling basis exists here.

■ We direct our focus to the language of the statute. *See Bd. of Trustees of IBT Local 863 Pension Fund v. C&S Wholesale Grocers, Inc.*, 802 F.3d 534, 542 (3d Cir. 2015) ("Statutory interpretation begins with the plain language of the statute and when the language is clear, the court 'must enforce it according to its terms.'" (quoting *Jimenez v. Quarterman*, 555 U.S. 113, 118, 129 S.Ct. 681, 172 L.Ed.2d 475 (2009))). By its terms, § 1915(g) applies when "the prisoner has, on 3 or more prior occasions, ... brought an action or appeal in a court of the United States that was dismissed on ... grounds" enumerated in § 1915(e)(2)(B)(i) or (ii). Parker undisputedly has brought three "actions" that were dismissed on enumerated grounds—yielding the strikes in *Nutter*, *O'Connor*, and *MCC*. Under *Coleman*, these dismissals are three "prior occasions," and they bar him from proceeding IFP in "bringing a civil action or appeal" going forward. Yet, Parker wishes to proceed IFP in bringing *this* appeal.

We first observe what the statute does *not* do, and what the statute easily could have done if Congress had intended it: the statute does *not* create an express exception to § 1915(g) treating an appeal from an order imposing a third strike differently from any other instance in which the prisoner wishes to bring an action or appeal. There is simply no language discussing this scenario, although Congress surely must have anticipated that prisoners would file appeals from third strike dismissals.

Despite this textual void, Parker argues, adopting the logic of the Solicitor General in his *Coleman* amicus brief, that "[t]he plain meaning interpretation of the phrase 'prior occasions' in this context is most reasonably read to refer to lawsuits that were instituted *before* the current lawsuit." Parker Br. at 19. Quoting the Solicitor General's *amicus* brief in *Coleman*, Parker contends that the word "prior" "refer[s] to strikes imposed in prior-filed suits, not to those imposed in an earlier stage in the same suit." *Id.* at 20.

We cannot square Parker's proposed interpretation with either the language of § 1915(g) or the Supreme Court's decision in *Coleman*. As Parker acknowledges, the word "prior" simply means "earlier in time." *See* Webster's Ninth New Collegiate Dictionary 936 (9th ed. 1990). A dismissal in a district court is, of course, earlier in time than an appeal of that dismissal—and therefore "prior" to the appeal. Moreover, the statute speaks of "prior *occasions*." In its unanimous decision, the *Coleman* Court recognized that "actions" and "appeals" are treated separately, and must each be considered distinct "occasions." *Coleman*, 135 S.Ct. at 1763. This leads us to the inescapable conclusion that the imposition of a third strike in a district court is an "occasion" that is "prior" to its appeal, and that § 1915(g) therefore must apply to an appeal from the imposition of a third strike.

In Parker's view, although he has had cases dismissed on enumerated grounds on three "occasions," only two of them were "*prior*" to this appeal. To reach that result, Parker contends that "prior" does not refer to "occasions" at all, but rather to "actions or appeals filed prior to the action that is on appeal." Parker Br. at 19. As a matter of grammar, it is clear that "prior"

modifies "occasions," and the text does not refer to "prior *lawsuits*." We fail to see how we could agree with Parker's proposed interpretation without re-writing the statute.

Parker also contends that interpreting "prior occasions" to include *all* occasions, even the underlying dismissal, would render the term "prior" superfluous and would therefore run contrary to our duty to give effect to every word of the statute. *See Loughrin v. United States*, —— U.S. ——, 134 S.Ct. 2384, 2390, 189 L.Ed.2d 411 (2014) (recognizing the "cardinal principle" of statutory interpretation, requiring courts to "give effect, if possible, to every clause and word of a statute" (quoting *Williams v. Taylor*, 529 U.S. 362, 404, 120 S.Ct. 1495, 146 L.Ed.2d 389 (2000))). We disagree.

In our view, the term "prior" sets a temporal parameter, referring only to strikes accrued earlier in time than the notice of appeal. All later-accrued strikes—even if imposed after the filing of the notice of appeal but before the prisoner's IFP motion is decided—are not "prior" strikes, and therefore do not "count" for purposes of the three strikes rule. *Millhouse*, 866 F.3d at 154 ("Strikes that accrue before the filing of the notice of appeal count as strikes—while strikes that accrue after the notice of appeal is filed do not."). If the statute did not include the term "prior," then *any* strikes, including those issued after a prisoner files an appeal but before IFP status is awarded or denied, could contribute to the strike count.[11] Thus, in our view, "prior" has meaning.

In sum, based upon the plain language of § 1915(g), we think it clear that Parker "has, on 3 or more prior occasions, ... brought an action or appeal in a court of the United States that was dismissed on ... grounds" enumerated in § 1915(e)(2)(B)(i) or (ii). We therefore conclude that he is subject to the restrictions set forth in § 1915(g) for purposes of this appeal.

## VI.

We recognize that, as a practical matter, most indigent prisoners who are denied IFP status will be unable to pre-pay the fees. Accordingly, our decision today means that some prisoners will be unable to challenge the imposition of a third strike, even though a wrongly imposed third strike would have long-term consequences for that prisoner's ability to bring cases IFP going forward. We have held, however, that requiring a prisoner to pre-pay fees does not amount to a violation of the right of access to the courts. *Abdul–Akbar*, 239 F.3d at 317 ("[T]he right of access to the courts is not absolute. ... [M]erely requiring a prisoner to pay filing fees in a civil case does not, standing alone, violate that prisoner's right of meaningful access to the courts.").

More importantly, regardless of any concern we may have with this outcome, it is our duty to give effect to the plain language of the statute. *See United States v. Ron Pair Enters., Inc.*, 489 U.S. 235, 241, 109 S.Ct. 1026, 103 L.Ed.2d 290 (1989) ("[W]here, as here, the statute's lan-

---

11. In fact, Parker appears to have received at least two additional strikes while this appeal was pending. *See generally Parker v. Boring*, No. 1:15-cv-01784, 2016 WL 3381287 (M.D. Pa. May 19, 2016), report and recommendation adopted, 2016 WL 3227250 (M.D. Pa. June 13, 2016); *Parker v. Banner*, No. 1:15-CV-01808, 2016 WL 4870505 (M.D. Pa. July 25, 2016), report and recommendation adopted, 2016 WL 4765964 (M.D. Pa. Sept. 13, 2016). Under our reading of the statute, neither of these strikes "counts" in assessing Parker's IFP eligibility on appeal.

guage is plain, 'the sole function of the courts is to enforce it according to its terms.' " (quoting *Caminetti v. United States*, 242 U.S. 470, 485, 37 S.Ct. 192, 61 L.Ed. 442 (1917)).) As we observed in our en banc decision in *Abdul–Akbar*,

> Congress has deliberately decided to legislate on this subject by proclaiming, as public policy, a determination to reduce prisoner litigation in the federal courts. As citizens, we may disagree with the congressional wisdom, but as judges, knowing the clearly stated legislative purpose, we may not disembowel the legislative act. Federal courts ... do not have unlimited power and authority. We are limited to that which has been granted by Congress. What Congress gives it may also take away. The ability to proceed I.F.P. is not a constitutional right. Congress granted the right to proceed I.F.P. in 1892, and it has the power to limit this statutorily created right. Here it has taken away our ability as judges to grant I.F.P. status to a "three strikes" prisoner .... Congress has held trump here, and it has dealt a hand. As judges we must play it.

239 F.3d at 315–16. We have no choice but to echo that sentiment today.

### VII.

■■■ For all of the foregoing reasons, and as set forth in our accompanying order, we will deny Parker's motion to proceed *in forma pauperis* in *MCC*, appeal No. 15–3449. We will also deny Parker's motion invoking the imminent danger ex-

ception to § 1915(g).[12] Accordingly, before we may consider the merits of this appeal, Parker must pay the full amount of the applicable filing and docketing fees in the District Court within fourteen days of our order. Should Parker pay the fees, this panel will retain jurisdiction to decide the merits of the *MCC* appeal—which, we note, has been fully briefed by counsel and is ripe for disposition. Should Parker fail to pay the fees as instructed, we will direct the Clerk to close the *MCC* appeal without further notice.

Finally, as previously discussed, counsel advised the Court during oral argument that Parker has abandoned the *O'Connor* appeal. Accordingly, as set forth in the accompanying order, we will dismiss *O'Connor*, No. 15–3451, pursuant to Fed. R. App. P. 42(b).

---

12. "[A] prisoner may invoke the 'imminent danger' exception only to seek relief from a danger which is 'imminent' at the time the complaint is filed." *Abdul–Akbar*, 239 F.3d at 312. In his motion, Parker argues that MCC's delay in providing him financial information prolonged his stay in prison, which is a hostile and dangerous environment. Although prison can undoubtedly be a dangerous place, incarceration alone does not satisfy the requirement of "imminent danger of serious physical injury" for purposes of § 1915(g). Indeed, if it did, every prisoner would be entitled to IFP status and the exception would swallow the rule. *See id.* at 315 (rejecting a proposed interpretation that would allow the exception to swallow the rule).