**PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 20-3286
_____

J. SUPOR & SON TRUCKING & RIGGING CO., INC.,
Appellant

v.

TRUCKING EMPLOYEES OF NORTH JERSEY
WELFARE FUND; TEAMSTERS LOCAL 560

_____

On Appeal from the United States District Court
for the District of New Jersey
(D.C. No. 2:17-cv-13416)
U.S. District Judge: Honorable Kevin McNulty
_____

Argued: November 17, 2021

Before: CHAGARES, *Chief Judge*, and BIBAS and
FUENTES, *Circuit Judges*

(Filed: April 5, 2022)
_____

Othiamba N. Lovelace                    [ARGUED]
Ronald L. Tobia

TOBIA & LOVELACE LLC
5 Sicomac Road
Suite 177
North Haledon, NJ 07508

   *Counsel for Appellant*

David W. New                                    [ARGUED]
DAVID W. NEW, P.C.
P.O. Box 447
Rutherford, NJ 07070

   *Counsel for Appellees*

_____

OPINION OF THE COURT
_____

BIBAS, *Circuit Judge*.

When judges read statutes, we start with the plain meaning of the text, often turning to dictionaries. But we do not end there. Sometimes, another reading of the text is not only plausible, but better. That is true here.

A contractor sued a pension fund. Under a federal law, the parties must arbitrate if the contractor is an "employer." A fair reading of the statute says that it is. Though that reading does not follow the dictionary definition of "employer," it draws from another part of the statute and preserves the statutory plan. Plus, it aligns with three decades of unanimous case law from our sister circuits. So the parties must arbitrate.

# I. BACKGROUND

## A. The law

A truck driver may have many employers over time. If only one employer funded a driver's pension, his retirement benefits would not reflect his whole career. So trucking unions often bargain with multiple employers to fund a single pension plan: a multiemployer plan.

Multiemployer plans are regulated by ERISA (the Employee Retirement Income Security Act of 1974). 29 U.S.C. § 1001 *et seq*. But when Congress first passed ERISA, it overestimated the stability of these plans. Multiemployer pension plans were vulnerable to free riders who withdrew early, sticking remaining employers with a much higher bill. *Id.* § 1001a(a), (4)(A). Remaining employers either had to foot that bill or slash pensioners' benefits. *Id.*

To solve the problem, Congress passed the Multiemployer Pension Plan Amendments Act of 1980 (the MPPAA), which amended ERISA. 29 U.S.C. § 1381 *et seq*. Under the MPPAA, employers who pull out early must pay a "withdrawal liability" based on those "unfunded vested benefits." *Id.* § 1381(a), (b)(1). That penalty provision gave rise to this case.

## B. The facts

J. Supor & Son Trucking is a construction contractor. It got a job on New Jersey's American Dream Project, one of the largest retail developments in America. J. Supor agreed to use truck drivers exclusively from one union chapter. It also agreed to contribute to the union drivers' multiemployer pension fund,

the Trucking Employees of North Jersey Welfare Fund, Inc. – Pension Fund.

But the Dream Project stalled. So J. Supor stopped working with the union drivers and pulled out of the Fund. To its surprise, it got a letter from the Fund demanding $766,878, more than twice what J. Supor had earned on the project. Because J. Supor was an employer under the MPPAA, the Fund reasoned, J. Supor had to pay a withdrawal penalty for ending its pension payments without covering its share. 29 U.S.C. § 1381(a).

J. Supor disagreed. The union, it said, had promised that it would not have to pay any penalty. So J. Supor sued the Fund in federal court to contest the withdrawal fee. The Fund moved for summary judgment, arguing that the statute requires "employer[s]" to arbitrate such disputes. *Id.* § 1401(a)(1). J. Supor retorted that it was not an employer under the Act.

Neither the MPPAA nor Third Circuit case law defines "employer." So the District Court adopted the definition used by every circuit to face the issue. An "employer," it ruled, includes "any entity 'obligated to contribute to a [pension] plan either as a direct employer or in the interest of an employer of the plan's participants.'" App. 8–9 (quoting *Korea Shipping Corp. v. N.Y. Shipping Ass'n-Int'l Longshoremen's Ass'n Pension Tr. Fund*, 880 F.2d 1531, 1536–37 (2d Cir. 1989)) (alteration in original). Because J. Supor met this definition, the District Court granted summary judgment and sent the parties to arbitration.

Now J. Supor appeals, asking us to depart from our sister circuits and define "employer" differently. The District Court had jurisdiction under 29 U.S.C. §185, and we have jurisdiction under 28 U.S.C. §1291. We review the District Court's grant of summary judgment de novo. *Tundo v. Cnty. of Passaic*, 923 F.3d 283, 286 (3d Cir. 2019).

## II. THE DISTRICT COURT PROPERLY USED ERISA'S DEFINITION OF "EMPLOYER"

Under the MPPAA, disputes between "employers" and "plan sponsors" over withdrawal liability go to arbitration. 29 U.S.C. §1401(a)(1). The Fund is the "plan sponsor." And the parties dispute J. Supor's withdrawal liability. So if J. Supor is an "employer," it must arbitrate.

We start with the text's plain meaning. An "employer" is "[o]ne who employs," specifically "[o]ne who employs servants, workmen, etc. for wages." *Employer*, *Oxford English Dictionary* (2d ed. 1989). Under that definition, J. Supor might not be liable because it may have employed the drivers only *indirectly*.

But the dictionary definition creates an immediate problem. It would cripple a core feature of the MPPAA: withdrawal liability for employers who exit multiemployer pension plans without covering their share. 29 U.S.C. §1381. If that penalized only *direct* employers, others could easily evade it by hiring indirectly through third parties. *See Carriers Container Council, Inc. v. Mobile S.S. Ass'n*, 896 F.2d 1330, 1343 (11th Cir. 1990). And that would defeat one of the MPPAA's chief innovations.

5

The dictionary definition of "employer" would also make withdrawal liability turn on minutiae. Is an entity an employer if it hires a pensioner as an independent contractor, not as an employee? What if it hires him through a subsidiary or subcontractor? Consider this case. On the record before us, even counsel are unsure whether J. Supor employed the truck drivers directly or through subcontractors. Oral Arg. 24:23–25:23, 28:26–28:41.

To avoid these thickets, every circuit to face this issue has adopted a more technical definition. All seven circuits define an "employer" as an entity "obligated to contribute to a plan either as a direct employer or in the interest of an employer of the plan's participants." *Korea Shipping*, 880 F.2d at 1537 (internal quotation marks omitted); *accord Resilient Floor Covering Pension Fund v. M&M Installation, Inc.*, 630 F.3d 848, 851–52 (9th Cir. 2010); *Cent. States, Se. & Sw. Areas Pension Fund v. Int'l Comfort Prods., LLC*, 585 F.3d 281, 284–85 (6th Cir. 2009); *Cent. States, Se. & Sw. Areas Pension Fund v. Cent. Transp., Inc.*, 85 F.3d 1282, 1287 (7th Cir. 1996); *Seaway Port Auth. of Duluth v. Duluth-Superior ILA Marine Ass'n Restated Pension Plan*, 920 F.2d 503, 507 (8th Cir. 1990); *Carriers Container*, 896 F.2d at 1343; *see also Mary Helen Coal Corp. v. Hudson*, 235 F.3d 207, 212 (4th Cir. 2000). This judicial consensus spans more than three decades.

The technical approach draws that definition from Title I of ERISA, the law that the MPPAA amends. Title I defines an "employer" as "any person acting directly as an employer, or indirectly in the interest of an employer, in relation to an employee benefit plan." 29 U.S.C. § 1002(5). Though Title I

6

definitions do not automatically apply elsewhere in ERISA, "they may … reflect the meaning" of terms in other titles. *Nachman Corp. v. Pension Benefit Guar. Corp.*, 446 U.S. 359, 370 n.14 (1980). And here, a version of the Title I definition fits better than the dictionary definition. By covering both direct and indirect employers, it avoids punching a hole in the statutory scheme.

But understanding the Title I definition in the MPPAA context presents a further puzzle. What kind of "relation" must an entity have to an employee-benefit plan to count as an employer? The MPPAA answers this question. It routinely describes an "employer" by its obligation to contribute to a pension. *See, e.g.*, 29 U.S.C. § 1002(37)(A), (A)(i) (defining a "multiemployer plan," in part, as "a plan … to which more than one employer *is required to contribute*"); *id.* § 1391(2)(A) (making withdrawal-liability computation turn on the "plan year[s] in which the employer has *an obligation to contribute*") (emphases added). Thus, an entity "relat[es] to an employee benefit plan" if it must contribute to one. *Cent. States*, 585 F.3d at 285 (quoting 29 U.S.C. § 1002(5) and citing *id.* § 1381(a)) (emphasis omitted). Following this logic, our sister circuits define an "employer" by its obligation to pay into a pension, either as a direct employer or on behalf of one. *Id.* at 284–85.

We adopt this definition too. It is plausible, protective of the statutory scheme, and supported by three decades of consensus.

This technical definition is in good company. Congress routinely defines "employer" both more expansively than direct employment and "in relation" to something else. *See,*

7

*e.g.*, 29 U.S.C. §2611(4)(A)(ii) (defining "employer" to include "any person who acts, directly or indirectly, in the interest of an employer to any of the employees of such employer"); *id.* §203(d) ("'Employer' includes any person acting directly or indirectly in the interest of an employer in relation to an employee."); *id.* §2001(2) ("'[E]mployer' includes any person acting directly or indirectly in the interest of an employer in relation to an employee or prospective employee."); *id.* §152(2) ("'Employer' includes any person acting as an agent of an employer, directly or indirectly.").

This reading also fits with the MPPAA's enacted statement of purpose and findings. In designing the MPPAA, Congress found that employers' premature withdrawal from multiemployer pension plans "adversely affect[ed] the plan[s], [their] participants and beneficiaries, and labor-management relations." *Id.* §1001a(a), (4)(A). So the MPPAA imposed a penalty for employer withdrawal to fix that free-rider problem. That solution would unravel if an employer could free ride again by outsourcing pension contributions to third parties.

Finally, our approach avoids creating a circuit split, something we are "generally reluctant" to do. *Parker v. Montgomery Cnty. Corr. Facility/Bus. Office Manager*, 870 F.3d 144, 152 (3d Cir. 2017) (internal quotation marks omitted). That is doubly so when there is a thirty-year consensus favoring another reading of the statute. True, we may have a "compelling basis" to depart from the consensus of other circuits when only one reading of the statute is plausible. *Id.* But that is not true here. Because this technical definition is plausible, we will follow our sister circuits' consensus.

8

True, if Congress meant to define "employer" this way here, it could have done so expressly. But the MPPAA has no definitions section. So this reading draws from the definition section of the very Title that the MPPAA amends. *See Nachman*, 466 U.S. at 370 n.14. It reinforces ERISA's statutory plan, buttressing withdrawal liability. And it eliminates the problem of employers evading withdrawal liability by outsourcing pension payments. We thus hold that under the MPPAA, an "employer" is any person obligated to contribute to a plan either as a direct employer or in the interest of one.

### III. AS AN EMPLOYER, J. SUPOR MUST ARBITRATE ITS DISPUTE

Under that definition, J. Supor is an employer. For the Dream Project, it agreed to hire drivers from one union chapter and contracted to pay into their Fund. Though we do not know whether it hired the drivers directly, it promised to pay into the fund either as a direct employer or on behalf of one.

Pushing back, J. Supor says that even if it is an employer, the union orally committed not to hold it liable for withdrawal fees. But that does not matter. Arbitrability does not hinge on liability. *See* 29 U.S.C. § 1401(a)(1). Besides, J. Supor agreed to pay into the fund, so it had to arbitrate any withdrawal disputes. *Id.* And parties may not contract to "evade or avoid liability" under the statute's protections. *Id.* § 1392; *Connolly v. Prison Benefit Guar. Corp.*, 475 U.S. 211, 224 (1986).

Even so, J. Supor argues on appeal, it was "deceived." Appellant's Br. at 13. And it repeats a line from its summary-

9

judgment brief: J. Supor "never would have signed the [agreement] had [it] not received assurances and promises from [a union representative] that [it] would not be obligated to pay withdrawal liability." *Id.* at 11. That line gestures at the possibility that J. Supor was fraudulently induced to sign the very agreement that now makes it an "employer." *See Carl Colteryahn Dairy, Inc. v. W. Penn. Teamsters & Emps. Pension Fund*, 847 F.2d 113, 119 (3d Cir. 1988).

That suggestion does not let J. Supor off the hook. Even if there was fraudulent inducement, that would at most make the agreement voidable. Restatement (Second) of Contracts § 164(1). To avoid it, J. Supor would have to repudiate it. *See id.* § 380(2). But J. Supor has never rejected the agreement. On the contrary, it treats the "contribution clauses that required J. Supor to contribute to the [Fund]" as still binding. Appellant's Br. 4. Yet it claims a "waiver of any withdrawal liability." *Id.* at 10. Because it cannot get that carve-out, it is still bound to pay into the Fund—making it an MPPAA employer.

Thus, we affirm the grant of summary judgment. On the record before us, J. Supor is an "employer," so we have no jurisdiction over its withdrawal-liability dispute with the Fund. 29 U.S.C. § 1401(a). But in resolving that threshold issue, we do not rule on the underlying merits. *AT&T Techs., Inc. v. Commc'ns. Workers of Am.*, 475 U.S. 643, 649 (1986). Instead, if J. Supor would like to continue to contest that liability, it must turn to arbitration. 29 U.S.C. § 1401(a).

10

\* \* \* \* \*

We follow all seven sister circuits in adopting the definition of "employer" as someone obligated to contribute to a plan, drawn from Title I of ERISA. Because J. Supor counts as an employer, it must resolve its withdrawal-liability dispute in arbitration. We will thus affirm.